## TERRY E. DORTCH AND RUDOLPH T. GARNETT
### *v.* STATE OF MARYLAND

[No. 22, Initial Term, 1967.]

174

*Decided April 18, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and DYER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*G. Joseph Sills, Jr.,* for appellants.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert Baker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Shortly after midnight on October 8, 1965, the Appellants, Terry E. Dortch and Rudolph T. Garnett, were observed by police officers in a stair-well at the basement entrance of St. Michaels and All Angels Episcopal Church located at 2001 St. Paul Street, Baltimore, Maryland. One of them was kicking

in a panel door leading to the undercroft of the building. Thereafter they endeavored to pry out the panel with their hands at which time the officers told them to come out of the stairwell with their hands up. Garnett was immediately taken into custody but Dortch, upon reaching the top of the stairs leading from the basement, hesitated for a moment and then fled. One of the officers was "pretty sure I recognized his [Dortch's] face." Two days later he viewed a photograph "to be positive in my identification of the subject face * * * who I observed at the Church." He then obtained a warrant for Dortch, who, in the company of his lawyer, surrendered to the police the next day.

The Appellants were convicted in the Criminal Court of Baltimore, without a jury, on June 9, 1965, of attempted burglary under the second count of the indictment, and sentenced to five years imprisonment.

In this appeal, the Appellants contend that:

1. They were charged and convicted of a crime that neither exists at common law or by statute.

2. The identification of Dortch was inadmissible.

In the indictment, the Appellants were charged with attempting to burglarize "the dwelling house of God" located at 2001 St. Paul Street. The evidence produced at the trial showed the premises to be owned by St. Michaels and All Angels Episcopal Church, a body corporate.

## I.

It is definitely established in this State, at least, that a church can be the subject of the common law crime of burglary, *McGraw v. State,* 234 Md. 273 (1964), cert. den. 379 U. S. 862. It is argued on behalf of the Appellants, however, that the phrase "dwelling house of God" does not carry the meaning "church" so as to bring this case within *McGraw,* supra.

The word "Church" according to the Webster's Third New International Dictionary, page 404, is derived from the Greek word *kyriakon,* short for *kyriakon doma* and is translated as "the Lord's house." For an extended discussion of the derivation, see Encyclopaedia Britannica (1959 edition, page 669).

Roget's Thesaurus (1962 edition, page 661) sets forth the expression "God's house" as an alternative expression for the word "church." In *McGraw,* supra, Judge Henderson (later Chief Judge) examines in detail the common law crime of burglary as it relates to churches. He quotes from Lord Coke's third institute (1817 Ed. page 64): "If a man do break and enter a church in the night, of intent to steal * * * this is burglary, for *ecclesia est domus mansionalis omnipotentis Dei.*"

Historically, therefore, the expression "dwelling house of God" would seem to be substantially synonymous with the word "church."

But even in modern day usage it seems apparent that to the ordinary citizen, irrespective of his faith, or lack of faith, the words "dwelling house of God" purport to mean a "church." Members of the clergy often refer to the church edifice as the dwelling house of God and their parishioners have no trouble in comprehending the use of the phrase. Moreover, the record indicates that counsel for the Appellants in the lower Court consistently refers to the premises which were the subject of the attempted burglary as "the church."

We are of the opinion, therefore, that the indictment, although not in commendable form, did charge a crime under the common law and that there was no fatal variance between the allegations in the indictment and the evidence adduced at the trial.

In any event, the purpose of an indictment is to apprise the accused of the crime charged. Maryland Declaration of Rights, Art. 21; *Putnam v. State,* 234 Md. 537; *Seidman v. State,* 230 Md. 305. Any question concerning the meaning of the phrase "dwelling house of God" could have been resolved through the appropriate procedures contemplated by Maryland Rule 715.

## II.

The Appellant contends that the identification of Dortch as a participant in the crime is solely an extra-judicial one and fails to meet the required standards as to admissibility either as substantive or corroborative evidence. This contention overlooks the fact that Officer Kingery, who personally observed the

commission of the crime, made a positive identification of Dortch in the Courtroom at the time of the trial.

The Appellant argues that Officer Kingery had only a momentary glimpse of the second man involved and that at that time neither knew or recognized him. It is true that Officer Kingery, when asked about the second man he saw coming out of the stair-well, stated: "At the time I was pretty sure I recognized his face. I could not * * *." Although defense counsel's objection at that point was overruled, the officer did not complete the sentence. Later on, however, the officer stated:

> "On the 10th of October, after further investigation, I viewed a photograph at Central District Headquarters to be positive in my identification of the subject. * * * Who I observed at the church."

Thereafter, Defense Counsel asked Officer Kingery:

> "Is it your testimony while you are standing there at the top of this railing, looking down at that door that you saw one of these people apparently, as you identified Mr. Garnett, kick that panel out?
> A. No sir, it was not Garnett. It was Mr. Dortch."

Under the total circumstances of the identification, it seems clear that the officer at the time of observing the crime was pretty sure he recognized the face of the second man as someone he knew but could not be positive as to the individual's name until he had examined a photograph of him. Having examined the photograph, he recognized the second man as an individual named Dortch and thereupon he obtained a warrant for his arrest.

In *Judy v. State,* 218 Md. 168 (1958) and *Walters v. State,* 242 Md. 235 (1966) the Court of Appeals of Maryland reviewed in detail the principles governing identifications. Under the doctrine stated in these cases the officer's testimony relating to the identification of Dortch was certainly admissible. The weight that should be given the testimony was for the trial court. As was said by the Court of Appeals in *Walters,* supra:

"The trial judge was fully informed of the circumstances surrounding the extrajudicial identification in this case. It was his proper function to determine the credibility of the witness and to attach that weight to her testimony which he thought proper. His determination will not be set aside unless clearly erroneous."

In this case we cannot say that the trial judge was clearly erroneous.

Counsel for the Appellants has listed a number of points in his Brief which the Appellants have raised in correspondence with counsel. There is nothing in the record before us which lends any substance to these points and therefore we are not in a position to pass upon them at this time. Maryland Rule 1085.

*Judgment affirmed.*