WILLIAM RASNICK *v.* STATE OF MARYLAND

[No. 200, September Term, 1967.]

*Decided May 6, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Solomon Reddick* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E.*

*Moylan, Jr., State's Attorney for Baltimore City,* and *A. Samuel Peregoff, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

William Rasnick, the appellant, contends that his conviction for murder in the first degree in a trial before the court in the Criminal Court of Baltimore should be reversed because there was insufficient evidence to support the proposition that the death occurred during the perpetration of an attempted robbery.

The evidence adduced at trial on January 19, 1967 showed that Frank John Jordon, male, 5'4" tall, weighing 98 lbs., died on August 8, 1966, as a result of head injuries. The autopsy report admitted into evidence by stipulation placed the time of the injury at about 7:30 a.m. on August 1, 1966.[1]

The only eyewitness, except the participants, to the occurrence was Patrick J. O'Donnell, 73 years of age, who testified that at approximately 5:40 p.m. on August 1, 1966, he was sitting on the steps of 102 North Washington Street; that he saw a man coming out of the bar at 100 North Washington Street, cross Washington Street; and approximately a minute or two later another man came out behind him. The second man he identified as Rasnick, the appellant, herein. The witness related that Rasnick walked after the first man calling to him, "wait up." The first man did not stop, but that Rasnick caught up with him and they engaged in a conversation which the witness did not overhear. Rasnick then "hit the other man and over the steps he went." The other man then got up, came back toward Rasnick, hollering, "He is robbing me. Help, help, he is robbing me." Rasnick then hit the other man again "with his fist and the man went over the step again." Rasnick then walked around the steps where the other man was lying and raised his foot and brought it down.

Rasnick was granted a recess in order to secure a transcript of the testimony at the preliminary hearing. On March 9th,

---

1. It will be noted the time of the alleged offense was at a later hour.

116

1967 the witness, O'Donnell, testified on further cross examination as follows:

"Q Mr. O'Donnell, once again, briefly, would you tell the Court exactly what you saw as you were sitting on the steps on the day in question?

"A Well, I was sitting on the steps and I saw the deceased come out of the bar, cross the street, and a few minutes later this Mr. Rasnick come out. He went across behind him and hollered for him. He got on the south side of Fairmount Avenue. Seen him talking there and the first thing I know this man, Rasnick, looked to me like he throwed him across the steps. He could have hit him. He went across the steps. The man got up, went around the step again. At this time, this deceased man hollered 'Help, he is robbing me.' He hit him again and went over the steps. Then he fell again and I saw Mr. Rasnick, whatever his name is, right there, put his foot up like he stomped him.

"Q I believe it was your testimony just now, Mr. O'Donnell, that when the two men first came together you stated Mr. Rasnick, and I think you used the words 'throwed him across the steps', or 'He could have hit him.'?

"A Correct.

"Q Do you recall testifying in this case, in your prior testimony, that the Defendant in this case, Mr. Rasnick, struck the deceased?

"A Well, he looked to me like he struck him. Could have been he just grabbed him, throwed him across the steps.

"Q Of course, is it true you are not sure whether or not he struck him or threw him across the steps?

"A No, I'm not sure. I was a little too far away to see it.

"Q After the Defendant, Mr. Rasnick, either threw or struck the deceased and he went across the steps, I understand it is your testimony the deceased then got up, correct?

"A  That is correct.

"Q  Then the deceased proceeded towards the Defendant, Mr. Rasnick, correct?

"A  Correct.

"Q  At this particular point did you see the deceased strike Mr. Rasnick?

"A  No, I did not.

"Q  Did you see Mr. Rasnick strike the deceased?

"A  No, only thing I saw at that time, the deceased, this man hollering 'Help, he is robbing me. He is robbing me.' Then he either struck or throwed him across the steps again.

"Q  This second time you are not sure whether or not the Defendant struck or threw him across the steps?

"A  No, I'm not. That is correct.

"Q  Again, it is my understanding, Mr. O'Donnell, when the deceased got up after he was thrown down the first time or struck down the first time, he came towards the Defendant, correct?

"A  Correct.

"Q  Approximately how far away was he from the Defendant when he was getting up in terms of feet?

"A  When he got up from being hit the first time?

"Q  Yes.

"A  Approximately four to five feet.

"Q  At no time did you see the Defendant go towards the deceased, is that correct?

"A  That is correct.

"Q  When the deceased got to the Defendant, Mr. Rasnick, after getting up, did you see him raise his hands at all?

"A  No, I did not at that time. When he started, when the deceased started hollering 'Help, I'm being robbed,' then he either hit him. . .

THE COURT: Who is 'he'? The Defendant, you mean?

THE WITNESS: Yes, Your Honor.

THE COURT: The reason the Court said 'Defendant' was because the witness was pointing to the Defendant in answering the Court's question. Is that stipulated?

MR. PEREGOFF: Yes.

MR. MAXWELL: Yes, sir.

THE COURT: Very well.

THE WITNESS: Either hit him or throwed him across the steps again, and the Defendant went around, picked his foot up, looked like he stomped him.

BY MR. MAXWELL:

"Q You didn't see that?

"A No, I did not.

"Q Did you see the Defendant at any time himself trip across the steps?

"A Not that I can recall.

"Q You recall testifying at the Homicide hearing in Municipal Court on October 7, 1966. Remember testifying in this case?

"A I testified practically the same statement as I'm giving now.

"Q Do you recall, sir, testifying in that particular case: 'They must have gotten in a little argument, fight or something. This man drove him across the steps with his fist and the man got up and come around —'. Do you recall that?

"A Yes, I recall that because they stopped in front of these steps before any argument.

"Q Recall testifying in your first testimony in this case Mr. Rasnick used his fist to strike the deceased?

"A Looked like his fist to me. I told you I was across the street.

"Q Do you remember, as we stated in the first hearing in this case, when you gave a statement to the Baltimore City Police Department right after you witnessed this incident you stated the man was thrown over the steps? Recall saying that to the Police Department?

"A Yes, I think I did.

"Q And again this afternoon you testified, Mr. O'Donnell, you are not sure whether he threw him or struck him?

"A Or struck him, that is correct.

"Q Do you recall in the preliminary hearing at the Police Court being asked the question: 'He came up behind him, had an argument. Then who struck the first blow?' The answer was: 'That I don't know, but I do know one man went over the steps and it wasn't that man,' indicating the Defendant. Remember that question and answer?

"A I do.

"Q You don't know, is that correct, who actually struck the first blow in this altercation?

MR. PEREGOFF: Objection.

THE COURT: Sustained. With your permission, Mr. Maxwell; Mr. O'Donnell, did you see the decedent strike or attempt to strike at any time the Defendant?

THE WITNESS: I did not.

BY MR. MAXWELL:

"Q Recall being asked this question in Municipal Court? Mr. O'Donnell, for the record, I am reading from the transcript of the Homicide hearing at page 16. Questioned by Mr. Federico, Court appointed in this hearing: 'In any event, you didn't see any robbery yourself?' Answer: 'No, no, no.' Question: 'Of course not. You don't know who struck the first blow, do you?' Answer: 'I do not, no.'

"A That is correct."

Rasnick testified that he began drinking with the deceased early on the day of August 1, 1966; and that the deceased had fallen down some steps at approximately 12 Noon. His story continued that he and the deceased had gone to Jay's Bar where they were refused service; they then went to Howard's Bar at 100 N. Washington Street, where they purchased beer, which he paid for; and that thereafter the deceased left the bar and went across the street, and he followed. An argument then ensued, the deceased reaching out and grabbing him by the

shirt collar, at which point Rasnick stated he then pushed him and he fell across the steps, that the deceased then got up and came back at him saying: "God damn you, I'll cripple you," when he then hit the deceased and knocked him across the steps. While the deceased was lying across the steps, blood trickling from his mouth, Rasnick related he then stepped over him and went to another bar. Rasnick contended that because of his hip injury, he could not run and had to defend himself against the deceased. On cross examination he denied stomping or attempting to rob the deceased. It was also learned that Rasnick was 5'6" tall and weighed about 149 lbs.

It was stipulated that Rasnick could not run because of an old hip injury.

A careful review of the record reveals that the sole evidence to support the proposition that Rasnick was engaged in an attempted robbery at the time the injuries causing death occurred, was the statement of the deceased: "He is robbing me. Help, help, he is robbing me," which statement was made at the time the deceased was advancing towards Rasnick, the accused. The trial judge found the testimony of Mr. O'Donnell to be entirely credible, and we, of course, accept that finding; but we do not think that that statement alone, in view of the other evidence, is sufficient to support a finding beyond a reasonable doubt that Rasnick was attempting to rob the deceased. There is no evidence that he attempted to take anything from the deceased; that he made any search of the deceased's clothing to find any valuables; and, in fact, the evidence discloses that after the deceased was lying helpless on the sidewalk, Rasnick voluntarily walked away, even though no one interrupted the proceedings.

In *Estep v. State,* 199 Md. 308, 86 A. 2d 470, 473 the Court of Appeals of Maryland said:

> "No matter how sordid the case and how suspicious the circumstances, we cannot permit a person charged with crime to be convicted without evidence. The conjectures of the trial judge might be entirely correct, and the evidence produced before him might be false in important particulars. Nevertheless, a conviction without proof cannot be sustained under the laws of

this State. A man is innocent until he is proved guilty, and there must be evidence which leads to such a result. Since we find there was no such evidence in this case, the judgment must be reversed."

Under Maryland Rule 1086 we find the evidence insufficient to support the judgment which, therefore, must be reversed.

*Judgment reversed and case remanded for a new trial.*