DANIEL CHRISTOPHER KINCER *v.* STATE
OF MARYLAND

[No. 266, September Term, 1967.]

*Decided September 16, 1968.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Donald S. Hurwitz* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, State's Attorney for Anne Arundel County,* and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant was convicted of receiving stolen goods at a court trial in the Circuit Court for Anne Arundel County and committed to the custody of the Commissioner of Correction for a term of 3 years.

The elements of the crime of receiving stolen property as stated in *Dixon v. State,* 1 Md. App. 623, 625, are:

1) the property must be received; and
2) it must, at the time of its receipt, be stolen property; and
3) the receiver must have guilty knowledge that it is stolen property; and
4) his intent in receiving it must be fraudulent.

Elements 1) and 2) were proved by stipulation and are not in issue. But the appellant contends on appeal from the judgment that elements 3) and 4) were not proved and therefore the lower court erred in rendering a verdict of guilty.

Robert H. Walker testified that he purchased a new 1966 fiberglass hull, inboard motor, Thunderbird Cruiser boat, 22 feet in length, manufacturer's hull No. 66261 on April 19, 1966 at a price of $6230.25 and obtained a certificate of title Serial No. 431654, boat No. Md. 56K from the State of Maryland Department of Chesapeake Bay Affairs under date of May 4, 1966. He kept the boat at the Port Tobacco Marina and between June 19 and June 26, when he was on vacation, it "disappeared." He had not given anyone permission or authority to take the boat or "use it in any way." He notified the owner of the Marina, the Maryland State Police and the "Department of Tidewater Fisheries." He next saw it about January 17, 1967 at Knott's Marina in Anne Arundel County.

Trooper First Class Joseph L. Sommers, Jr. of the Criminal Investigation Division of the Maryland State Police received a call from Walker on June 26, 1966 that the boat was missing and he went to the Port Tobacco Marina and observed that the slip in which the boat had been moored was empty. A search of the Marina failed to locate it. He notified the Department of Tidewater Fisheries and the Maryland State Police, giving a description of it and the boat number and the serial number. About January 16, 1967 he went to the Department of Chesapeake Bay Affairs and examined boat titles of "any boat of this description that had been titled since the time this boat had been missing" and located a title of a boat of the general description of the missing boat, except for the year, in the name of the appellant. The title indicated that the home port of the

boat was Stoney Creek and he went there and found the boat at Knott's Marina. The application for the title issued to the appellant showed his address to be 1011 Bristol Place, Baltimore, Md., that the registration was "new", that the boat was a Thunderbird, inboard, manufacturer's hull No. APR-51332, fiberglass hull, 22 feet 6 inches in length, model year 1965. It stated that the total purchase price was $1900,[1] that the boat had been purchased from "Mr. Harry Glass" on June 23, 1966, that the boat had not been registered or titled and had no boat number and that there was no outstanding lien. The certification of the sales price bore the purported signature "Harry T. Glass" and gave his address as 5104-6th Street, Baltimore 25, Md. The application was signed "Daniel Christopher Kincer" and was sworn to before a Notary Public. Attached to the application was a handwritten document dated June 23, 1966 as follows:

> "I hereby sell to Daniel Christopher Kincer a 22 ft.
> 6 inch Fiberglass Boat Hull Number APR-51332—
> as is for the amount of $1900.00"

It bore a signature "Harry T. Glass" with the address, 5104-6th Street, Baltimore, Md. 21225. The certificate of title for the boat issued under date of June 27, 1966 upon Kincer's application was serial No. A 37880, boat No. Md. 1845K, manufacturer's hull No. APR 51332. On the rear of the certificate, under date of 1 October 1966, the appellant certified under oath that he did sell the boat to David Paton, 6009 Huntridge Road, Baltimore, 10 Md. for the sum of $3850.00 and Paton certified under oath that he purchased the boat for that amount. At the time the boat was recovered it had on the hull boat No. MD. 1845K. On the rear rib of the hull the officer removed a plastic

---

1. The application, except for those spaces specifically designated as not to be filled in by the applicant and except for Section 4, was completed in blue ink. The spaces not to be filled in by the applicant were completed in red ink, apparently by a clerk in the Department of Chesapeake Bay Affairs. Section 4, in which the amount of the excise tax and purchase price were to be stated, carried the designation "must be filled in" but it, including the amount of the purchase price was completed in red ink.

plate containing the serial No. "APR 51332." He delivered it to the Maryland State Police Laboratory. The officer further testified that he attempted to locate Harry T. Glass. There was no 5104-6th Street, Baltimore, Md.—"it would have to be a continuation of 6th Street and it would be in the middle of a field. I contacted the Post Office in that area. I contacted the Telephone Company for anyone with the name of Harry T. Glass. I also contacted the Police Department for anyone who may possibly have been arrested with that name, and I was unable from the phone books or anyway to find out anyone by the name of Harry T. Glass. * * * I have been unable to locate him." The bill of sale and application for title were delivered by the officer to the Maryland State Police handwriting expert. At this point in the trial there was entered in evidence by stipulation that:

1) the signature of the appellant on the application for title was his signature;

2) the appellant "filled out the body of the alleged bill of sale from Harry T. Glass, excluding the signature of Harry T. Glass and excluding the notary."

3) the boat recovered "and which was at one time in the possession of the defendant, was the same boat that was stolen from Mr. Walker."

4) the numbers on the plastic plate had been altered to read APR 51332 but it was unable to be determined by laboratory tests what the original numbers were.

5) there was no boat manufactured by Thunderbird with the numbers now appearing on the plate.

6) the boat was sold by the appellant to James W. Knott at a price of $2700.

An employee of the Department of Chesapeake Bay Affairs testified that when an application for title and registration of boats is received properly completed on its face, the model year is accepted as designated, as a matter of course.

The appellant testified that on a bulletin board in a supermarket where he shopped he saw a notice that a fiberglass cruiser was for sale cheap. He called the telephone number (no name was given) appearing on the notice. He talked to a man who said his name was Harry—"I didn't know his last name

until we signed the bill of sale at the Notary Public." A week before he bought it Harry took him for a ride in the boat and he agreed to buy it for $1900. Harry told him it was a 1965 model and went with him to apply for the title. He had never before owned a boat and did not know anything about them. "I thought it was a lot of money myself. I wouldn't pay $6000 for the Queen Mary." The day he paid for the boat he was at Knott's Marina and Knott asked him how much he paid for it and when he informed Knott of the price, Knott said, "Well, when you get ready to sell it let me know." He used the boat all summer (he received two citations for violations from the Tidewater Fisheries) and at the end of the season told Knott he was ready to sell it. Knott offered him $2800 but after taking the boat out said something was wrong with "the back part of it" and would he take $2700 for a fast deal. The appellant agreed and sold the boat for that amount. He denied that he altered the hull numbers on the plastic plate, denied knowledge that the boat was stolen and claimed that he knew nothing about the price of boats. With regard to the bill of sale he said that Harry told him, "My handwriting is not too good, go ahead and make it say what you want and I will sign it." He wrote the bill of sale and Harry signed it. On cross-examination he said that he paid cash which he withdrew from a $2000 account he had in a bank. He said that he did not see or request to see a title certificate showing the ownership of the boat at the time he bought it nor a bill of sale indicating that Glass was the true owner. When he first called Glass on a Wednesday arrangements were made to meet at "a local tavern" in Baltimore the following Saturday at which time they went to La Plata to look at the boat. They went for a ride and he paid for the boat a week later when he next saw Glass and the boat at Knott's Marina. That same afternoon they went to the Department of Chesapeake Bay Affairs, obtained an application for title, and then went to Baltimore to a Notary Public the appellant knew "by sight" to have the forms completed. The Notary asked Glass for his driver's license and Glass showed it to him but the Notary Public was not called by the appellant as a witness. He did not consult anyone about buying the boat, even though he knew nothing about boats. "I

liked it. And to me I thought it was a good deal." He decided to pay $1900 for the boat because that was all he had; he needed the other $100 for taxes and transfer charges. "The man told me he wanted $2500. I told him I didn't have it. He says, 'How much can you get?' I told him $1900 was all I could go." Glass accepted that offer. When he told Knott how much he paid for the boat, Knott said that he had made a good deal and to let him know when you get ready to sell it. When he first saw the boat "it was clean, a clean good looking boat. I looked—it was —well he told me it was a '65. It could have been a '65 took care of. I didn't know it was a new boat. It didn't look new but it was clean."

It is conceded by the appellant that he received the boat and that at the time of its receipt it was stolen property. It is not necessary that the knowledge of the receiver that the property was stolen be direct or actual. Such knowledge may be found in a rational inference deduced from circumstantial evidence when such proof indicates that the receiver knew or could reasonably have suspected that the property in his possession was stolen. *McGlothlin v. State*, 1 Md. App. 256, 262. Possession of stolen property by one charged with unlawfully receiving it, although not sufficient to show guilty knowledge, is a strong circumstance to be considered with all other evidence of guilty knowledge. *Jordan v. State,* 219 Md. 36. The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Sadler v. State,* 1 Md. App. 383. We cannot say that the evidence here did not support a rational inference that the appellant knew or could reasonably have suspected that the boat was stolen. Assuming that there was a Harry T. Glass,[2] such guilty knowledge could have been found by the trial court in a rational inference deduced from the unusual circumstances of the appel-

---

2. The appellant made no attempt to show from bank records or any other source that he had $2000 on deposit and withdrew $1900 at the time of his alleged purchase of the boat. Nor did he give the name of the bank.

lant's contacts with Glass; the discrepancy between the amount the appellant paid for the boat and its fair market value, as shown not only by the original purchase price when new but also by the amount for which the appellant sold it to Knott ($2700 at the end of the boating season) and the amount for which Knott promptly re-sold it to Paton ($3850) ;[3] the ready acceptance by Glass of the amount the appellant offered to pay; the lack of a title certificate in the name of Glass and a lack of a bill of sale to Glass, concerning which the appellant made no inquiry and no request for explanation; the fact that the application for title, signed and sworn to by the appellant, contained a statement that the boat had not been theretofore registered or titled and had no boat number, although the appellant said he thought it was a used boat and not a new one;[4] the fact that it was clearly apparent by even casual observation of the plastic plate bearing the serial number of the boat that the number had been altered; and the non-existence of the address alleged to be that of Glass. And Harry T. Glass was an ethereal figure at best, who was not produced by the appellant, who could not be located by the police, whose purported address did not exist and whose alleged telephone number the appellant did not disclose. The trial judge was under no obligation to believe the defendant's denials or explanations. *Tillery v. State,* 3 Md. App. 142, and the weight of the evidence and the credibility of the witnesses were for him to determine, *Trout v. State,* 3 Md. App. 259.[5]

With regard to the fraudulent intent in receiving the stolen property, the intention need not be *lucri causa,* but one merely

---

3. The appellant did not assign his title certificate to Knott, his purchaser, but to Paton. In the assignment the appellant certified the purchase price to be $3850.

4. It was clearly stated on the back of the application for title that when a used vessel from a title state is purchased the certificate of title issued by the state must accompany the application and if the vessel is from a non-title state a "registration stub" of the non-title state and a bill of sale must be submitted. And if the vessel has never been registered, as the application in the instant case indicated, the application provides that a written explanation be attached, which here was not done.

5. The appellant admitted to a prior conviction of larceny in 1958.

hostile to the title of the true owner. *McGlothlin v. State, supra,* at 262. The other three elements of the crime being proved, the fraudulent intent was patent. Upon obtaining possession of the boat, the appellant obtained a certificate of title in his own name forthwith, used the boat the entire summer and then sold it at a substantial profit (demonstrating *lucri causa*), each of which were hostile to the title of the true owner.

We think that the findings of the lower court on the evidence were not clearly erroneous and affirm the judgment. Md. Rules, 1086.

> *Judgment affirmed; appellant to pay costs.*