DONALD LEE ROBINSON, GEORGE GENE AUSTIN, AND MARGARET ANN LOTHES *v.* STATE OF MARYLAND

[No. 140, September Term, 1968.]

724

Decided January 29, 1969.

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Victor L. Edwards* for appellant Robinson, *Richard J. Hopkins* for appellant Austin, and *A. Parks Rasin, Jr.,* for appellant Lothes.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William P. Fennell, State's Attorney for Kent County,* on the brief, for appellee.

PER CURIAM.

Donald Lee Robinson, George Gene Austin and Margaret Ann Lothes, the appellants, complain of convictions in the Cir-

cuit Court for Kent County. Robinson and Austin were convicted of armed robbery and each was sentenced to a term of fifteen years. Margaret Ann Lothes was convicted of being an accessory after the fact and sentenced to a term of eight years. The appellants, Robinson and Austin, allege error in the failure of the trial judge to grant a severance requested by Lothes and complain of tainted lineup identifications. Appellant Lothes contends that the evidence was not sufficient to support the verdict of guilty. The evidence can be summarized as follows:

William Chauvenay, the Manager of the Seaboard Finance Company in Chestertown, testified that on January 22, 1968, at about 11:20 A.M., two Negro males came in ostensibly to apply for a loan. After being there a short time and while their credit was being checked, the taller of the two men (Austin) produced a revolver and said, "This is a hold up. Don't do anything else." The other man (Robinson) also pulled out a revolver. Chauvenay was directed to the bathroom along with two employees, Nancy R. Legg and Raymond L. Lusby. The robbers took $47.00 from Chauvenay, $2.00 from Lusby and $840.00 of the company's money. Before leaving they sprayed some chemical mace on their victims. The victims had approximately ten minutes in which to observe the two robbers. Chauvenay identified Robinson and Austin at a lineup on January 26th and at the trial. He also gave a detailed description of the robbers, and identified certain exhibits consisting of clothing, a can of chemical mace, and two pistols as being similar to those of the robbers. It was brought out that Chauvenay had seen a picture of Robinson and Austin in the morning paper on the day prior to the lineup under the heading "Hit bank in Dover" but did not read the accompanying article. He immediately recognized the picture as being that of the robbers, and took it in and showed it to his fellow employees who also instantly recognized the picture as being that of the robbers.

Lusby testified and corroborated Chauvenay's description of the events and the perpetrators. He also identified the robbers at the lineup and at the trial. Lusby had also seen the picture of the robbers but had not read the article.

Nancy R. Legg gave essentially the same account of the crime and the same description of the perpetrators as the two other

witnesses. She identified Robinson and Austin in the lineup and in court as the robbers. She also saw the picture and did read the write-up prior to the lineup.

Dianne Curlett left her home in Chestertown about 11:00 A.M. on January 22nd. She noticed two Negro men drive up in front of her home, open their trunk and then walk down the street. As she was driving by the car she noticed a white girl sitting in the front seat. She positively identified Austin and most hesitantly identified Margaret Lothes at the lineup and at the trial as two of the people she had seen. She also had seen the pictures in the newspaper and read several articles prior to the lineup. She was unable to identify Robinson without the help of the pictures in the newspaper so she declined to identify him at the lineup or trial because "it was only fair."

Trooper Robert E. Williams investigated the robbery, obtained descriptions of the suspects from the victims, and additionally of the car from Dianne Curlett. On January 25th while acting on this information he observed appellants, in a car meeting the description, proceeding south on Route 301. He stopped the car and arrested the occupants. A subsequent search revealed the clothing, chemical mace, and weapons which were described by the witnesses and which were introduced into evidence through the officer. He conducted the lineup on January 27th at which time appellants were represented by their retained trial counsel. He testified as to the witnesses' identification of appellants at the lineup, and pictures of the lineups were introduced.

Robinson and Austin contend that the trial court committed error by denying the motion of their co-defendant, Lothes, for a severance, alleging that they, being Negroes, were prejudiced because they were forced to trial with Lothes, a white woman. Aside from the fact that there is nothing in the record to support their contention of prejudice we know of no rule that would permit them to take advantage of a motion made by a co-defendant which was based on entirely different grounds *i.e.* that certain evidence would be admitted at the trial of the robbers which would not be admitted in the trial of the accessory. Since Robinson and Austin made no motion to sever, under Maryland Rule 1085 there is nothing before us to review.

Robinson and Austin also contend that their lineup was unfair under *United States v. Wade*, 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149, *Simmons v. United States*, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed 1247 and under *Presley v. State*, 224 Md. 550, 168 A. 2d 510 but we do not agree. The record shows that the lineup was conducted strictly in accordance with the precepts of these cases. The appellants' retained counsel was present at the lineup and the only issue presented to show the unfairness of it is that witnesses participating therein had observed pictures of the appellants in a newspaper prior to the time the lineup was held. The record, however, also shows that three of the witnesses recognized the robbers as soon as they saw their pictures in the paper; that they had ample time in which to carefully view the robbers during the holdup, and that they gave a good description of them to the police officers investigating the crime, all of which are proper factors to be considered in determining whether or not an improper lineup tainted the in-court identification. Dianne Curlett, the fourth witness, identified Austin as the person she saw near her home immediately prior to the robbery, and she most fairly stated that she was unable to identify Robinson without the help of the pictures in the newspaper and was most hesitant to make any identification at all as to Margaret Lothes. Under the circumstances of this case we do not see how the mere fact that the witnesses saw pictures of the appellants in the newspaper prior to the lineup would make the lineup unfair nor would in any way make the in-court identification inadmissible. The trial court so found and we cannot say that his ruling was erroneous. Compare *Rath v. State*, 3 Md. App. 721, 240 A. 2d 777.[1]

Margaret Ann Lothes contends that the evidence was insufficient to support her conviction as an accessory after the fact. We agree. Lothes was allegedly seen near the scene of the robbery, and she was apprehended with the two robbers some three days after the robbery.

---

1. The State contends that there was no objection to the in-court identification but the record indicates quite clearly the objections were made and that the trial court specifically ruled on the objections.

Dianne Curlett most hesitantly identified Lothes as the girl in the car, later found to belong to the robbers, which was in the vicinity of the robbery. Curlett testified that the girl in the car was curled up on the passenger side of the front seat, and that she looked tired. The girl would have been unable to observe the scene of the crime from where the car was parked. The whole tenor of Curlett's testimony pertaining to the identification of Lothes was one of a total lack of positiveness. She described Lothes as small with a round face, dark eyes and a white or mulatto complexion; however, the record shows that Lothes was 5'7" or 8" in height with a narrow face, light hazel or green eyes, and a very white complexion. Since, Curlett's glimpse of the girl was when she was in a curled up seated position, Curlett was only able to base her identification on the girl's face—in particular, her eyes. The only time Curlett was positive in her identification was when the court asked her point blank if Lothes was the girl in the car; however, on further questioning by counsel she again became most hesitant.

The only other evidence to connect Lothes to the crime was that she was apprehended with the robbers in the same car Curlett had seen some three days earlier. Various clothing and weapons used in the robbery were found in the vehicle when Lothes was apprehended.

In *Watson v. State*, 208 Md. 210, 117 A. 2d 549 the Court of Appeals of Maryland defined an accessory after the fact as "one who knowing that a felony has been committed, harbors and protects the felon or renders him any other assistance to elude punishment."

Guilty knowledge may be inferred from the circumstances, see *Kincer v. State*, 5 Md. App. 80, 245 A. 2d 411. In the case at bar there was not enough evidence for a rational inference to be drawn that Lothes knew of the crime and thereafter aided the robbers.

> "In a nonjury trial, the judge determines the weight of the evidence and the credibility of the witnesses, *Sutton v. State*, 2 Md. App. 639, 236 A. 2d 301; *Sadler v. State*, 1 Md. App. 383, 230 A. 2d 372. Indentification by the victim is enough to convict. *Davis v. State*,

2 Md. App. 630, 236 A. 2d 307, but if there is a lack of positiveness in the identification, this only goes to the weight not the admissibility of the evidence, *Logan v. State,* 1 Md. App. 213, 216, 228 A. 2d 837, and 'the weight that should be given the testimony was for the trial court' to decide, *Dortch v. State,* 1 Md. App. 173, 177, 229 A. 2d 148. The evidence as to the identification was sufficient to support the verdict. . . ." *Gibson v. State,* 4 Md. App. 222, 242 A. 2d 204 at 206.

Finding of trial court as to identification will only be disturbed if *clear* error, *Gunn v. State,* 4 Md. App. 379, 384, 243 A. 2d 15 ; see *Carroll v. State,* 3 Md. App. 50, 53, 237 A. 2d 535.

The equivocations of the witness were of such intensity that for the trial court to believe her identification would be clear court error, see *Gunn, supra.*

We think that the time lag of three days would make Lothes' connection with the robbery too tenuous, see *Burkett v. State,* 5 Md. App. 211, 245 A. 2d 911.

Therefore, there was not sufficient evidence to prove the *corpus delicti* that she knew of the crime and thereafter aided and abetted the robbers nor was there sufficient evidence of the identity of the appellant, Lothes, as the criminal agent, cf. *Price v. State,* 3 Md. App. 155, 159, 238 A. 2d 275. Under Maryland Rule 1086 we find the evidence insufficient to support the judgment which, therefore, must be reversed. See *Rasnick v. State,* 4 Md. App. 114 at 120-21, 241 A. 2d 420 wherein we quoted the Court of Appeals in *Estep v. State,* 199 Md. 308, 86 A. 2d 470, 473 as follows :

" 'No matter how sordid the case and how suspicious the circumstances, we cannot permit a person charged with crime to be convicted without evidence. The conjectures of the trial judge might be entirely correct, and the evidence produced before him might be false in important particulars. Nevertheless, a conviction without proof cannot be sustained under the laws of this State. A man is innocent until he is proved guilty, and there must be evidence which leads to such a re-

sult. Since we find there was no such evidence in this case, the judgment must be reversed.' "

> *Judgment affirmed as to Donald Lee Robinson and George Gene Austin*
>
> *Judgment reversed as to Margaret Ann Lothes and case remanded for a new trial*
>
> *Costs to be paid equally by Donald Lee Robinson, George Gene Austin and the County Commissioners of Kent County.*