WILLIE PRESTON JACKSON, JR. *v.*
STATE OF MARYLAND

[No. 9, September Term, 1970.]

*Decided November 4, 1970.*

338

The cause was argued before MURPHY, C.J., and ORTH and THOMPSON, JJ.

*Jack E. Richards* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

*THE OFFENSE OF RECEIVING STOLEN GOODS*

*The Common Law*

To buy or receive stolen goods, knowing them to be stolen, was a misdemeanor at common law.[1] The receiver was indictable for misprision of the felony of larceny, because of his knowing the thief and neglecting to prosecute him, or of compounding the felony, if he agreed not to prosecute him, each a substantive misdemeanor.[2] But

---

1. 4 Blackstone, Commentaries 38, 132.
2. Clark and Marshall, Crimes, 7th Ed., § 12.37, p. 968. Blackstone refers to the offense "of taking a reward under pretense of helping the owner of his stolen goods. This was a contrivance carried to a great length of villainy in the beginning of the reign of George the First; the confederates of the felons thus disposing of stolen goods, at a cheap rate, to the owners themselves, and thereby stifling all further inquiry. The famous Jonathan Wild had under him a well-disciplined corps of thieves, who brought in all their spoils to him, and he kept a sort of public office for restoring them to the owners at half-price. To prevent such audacious practice, to the ruin of and in defiance of public justice, it was enacted, by statute 4 Geo. I. c. 11 that whoever shall take a reward under the pretense of helping anyone to stolen goods shall suffer as the felon who stole them, unless he causes such principal felon to be apprehended and brought to trial, and also give evidence against them. Wild still continuing in his old practice, was upon this statute at last convicted and executed." 4 Blackstone, Commentaries 132.

As to compounding the felony of larceny, Blackstone terms it *theft bote,* "which is where the party robbed not only knows the felon, but also takes his goods again, or other amends, upon agreement not to prosecute." Id., at 133-134.

See Hochheimer's Criminal Law, 1st Ed., § 42, p. 25; Perkins on Criminal Law, 2nd Ed., pp. 321-322.

the receiver was not an accessory to the theft because he received the goods only and not the felon. By statutes 3 W. & M., c. 9, § 4 and 5 Anne c. 31, § 5 a receiver was made an accessory after the fact. But Blackstone pointed out, "because the accessory cannot in general be tried, unless the principal or after the principal is convicted, the receivers by that means frequently eluded justice. To remedy which, it is enacted, by statute 1 Anne, [Stat. 2] c. 9 [§ 2] and 5 Anne, c. 31, [§ 6] that such receivers may still be prosecuted for a misdemeanor, and punished by fine and imprisonment, though the principal felon be not before taken so as to be prosecuted and convicted. * * * So that now the prosecutor has two methods in his choice: either to punish the receivers for the misdemeanor immediately, before the thief is taken, or to wait till the felon is convicted, and then punish them as accessories to the felony. But it is proved by the same statutes, that he shall only make use of one, and not both, of these methods of punishment." 4 Blackstone, Commentaries, 132-133. See *State v. Magliano,* 7 Md. App. 286.

*The Maryland Law*

The inhabitants of Maryland are entitled to the common law of England and "to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity * * *." Art. 5, Declaration of Rights, Constitution of Maryland. In the preface to the Second Edition (1912) Alexander, British Statutes in Force in Maryland, Ward Baldwin Coe states:

> "The Statutes, 3 W. & M., c. 9, s. 4, 1 Anne Stat. 2 c. 9, s. 2 and 5 Anne c. 31, ss. 5, 6, dealing with the offense of receiving stolen goods, were omitted in the original edition. They were considered in State v. Hodges, 55 Md. 127, but they were certainly not there held to be in force,

and in any case the matter appears to be covered by our own statute on the subject. They have, therefore, been omitted in this edition also." [3]

Thus it appears that with respect to the offense of receiving stolen goods, the inhabitants of Maryland did not obtain the benefits of the English statutes designed to prevent receivers from eluding punishment although acting "to the ruin and in defiance of public justice." But as Mr. Coe observed, by 1912 the matter was covered by our own statutes.

On 6 January 1810 the General Assembly passed a comprehensive "act concerning crimes and punishments." Chapter 138, Acts 1809 recognized that "it frequently happens, that men resigning themselves to the dominion of inordinate passion, commit great violations upon the lives, liberties or property, of others, which it is the great business of the laws to protect and secure, and experience evinces that the surest way of preventing the perpetration of crimes, and of reforming offenders, is by a mild and justly proportioned scale of punishments." The act then designated crimes and punishments for offenses against the government; offenses included "under the general dominion of murder"; offenses "affecting the habitations, houses or vessels of individuals"; offenses affecting private property; offenses affecting "the public police"; and offenses affecting public justice or public property. It covered a multitude of miscellaneous matters in-

---

3. In Niles, Maryland Constitutional Law (1915) in the discussion of Art. 5 of the Declaration of Rights, it is stated, at p. 17:
    "In 1882, *Dashiell v. Attorney General*, 5 H. & J. 401, the Court of Appeals thought the only evidence to be found in relation to the question 'which of the statutes by experience had been found applicable' was furnished by '*Kitty's Report of the Statutes*', and that this book 'was compiled, printed and distributed under the sanction of the State for the use of its officers, and is a safe guide in exploring an otherwise very dubious path.'
    This book is now obsolete, but its place has been taken by '*Alexander's British Statutes*' which is now our 'guide' along the path mentioned by the court."

volving the administration of criminal justice.[4] Section VI dealing with offenses affecting private property provided by subsection 8:

> "Every person who shall be duly convicted of the crime of receiving any stolen money, goods or chattels, knowing the same to be stolen, or of the crime of receiving any bond, bill obligatory, or bill of exchange, promissory note for the payment of money, lottery ticket, bank note, paper bill of credit, certificate granted by or under the authority of this state or of the United States, or any of them, knowing the same to be stolen, shall restore such money, goods or chattels, or thing taken and received, to the owner or owners thereof, or make restitution to the value of the whole, or such part as shall not be restored, and shall undergo a confinement in the penitentiary for a period not less than three months nor more than ten years, to be dealt with as hereinafter directed; and such receiver may be prosecuted and punished, although the principal offender shall not have been convicted."

In *Kearney v. State,* 48 Md. 16 (1877) the Court said, at 23, that the part of the statute defining and punishing the crime of receiving any bond and similar items designated "created new offenses unknown to the common law. 2 East's P. C. 597." However in *State v. Hodges,* 55 Md. 127 (1880) the Court, answering the question whether in this State the offense of receiving stolen goods was a felony or a misdemeanor said, at 135: "All the books agree that such an offense at common law is but a misdemeanor punishable by fine and imprisonment." And it found that

---

4. For example, it contained provisions that no conviction or attainder shall work corruption of the blood or forfeiture of estate; for trial to proceed on an indictment of treason or felony as on a plea of not guilty although the accused stand mute; for peremptory challenges of jurors; for jurisdiction; for change of venue; for the incarceration, punishment and care of prisoners.

the offense in this State has always been considered as a misdemeanor, citing *Kearney*.[5]

Acts 1892, Ch. 546 (Code 1888, Art. 27, § 234) increased the minimum sentence to 18 months and added the proviso that where the things received amount to less than $50 in value the judge passing sentence shall have discretionary power to sentence the person convicted to imprisonment in jail or the House of Correction instead of the Penitentiary.

Acts 1902, Ch. 18 removed the minimum sentence provision and the proviso of Ch. 546, Acts 1892, providing simply that upon conviction sentence of not more than 10 years could be imposed to be served in the penitentiary, jail or the house of correction.

Acts 1918, Ch. 424 (Code 1914, Art. 27, § 423) added that the receiver may be prosecuted and punished "although such receiver shall have received such money, goods or chattels or things from a person other than the person by whom such money, goods, chattels or things shall have been stolen."

Acts Sp. Sess. 1936, Ch. 106 (Code 1924 Ed., Art. 27, §§ 470 and 470 A) for the first time determined the severity of the punishment according to the value of the things received. It provided for a maximum sentence of 10 years when the value was $25 or upwards, § 470, and for a fine of not more than $50 or imprisonment for not more than 18 months, or both, when the value was under $25, § 470 A. A two year period of limitations was placed on the prosecution of the offense of receiving things under the value of $25. But unlike the offense proscribed when the value of the things received was $25 or upwards, there was no provision when the value was less than $25 that the receiver may be prosecuted and punished although the principal offender shall not have been convicted and although the things were received from a

---

5. The Court referred to the statutes 3 W. & M., Ch. 9, § 4 and 1 Anne 2 Ch. 9, § 2 and 5 Anne Ch. 31, §§ 5 and 6 but it found it unnecessary to reach a decision as to whether they extended to the province of Maryland and as Mr. Coe observed, *supra*, did not apply them.

person other than the person by whom the things were stolen. However, this was added by Acts 1945, Ch. 635 (Code 1939 Ed., Art. 27, § 549) which also specifically designated the offense of receiving things under the value of $25 as a misdemeanor.

In the 1951 edition of the Code, the crime of receiving stolen things of the value of $25 or upwards appeared in Art. 27, § 562 and the crime of receiving stolen things under the value of $25 in § 563. Chapter 427, Acts 1953 amended § 563. It changed the value of the things received to under $100 and increased the fine to $200 and the term of imprisonment to 3 years. The failure to amend § 562 to conform with the amendment of § 563 was remedied by Ch. 21, Acts 1954 which raised the value of things received under § 562 to $100 or upwards.

By Acts 1966, Ch. 628, receiving things of the value of $100 or upwards was designated a felony (Code 1957 Ed., 1965 Supplement, Art. 27, § 466).[6]

It was said in *State v. Hodges, supra,* in the face of the statutes then in effect (1888), "In this State, the Code merely prescribes the punishment for receiving stolen goods, and does not in any manner change the nature or character of the offense itself." In *Henze v. State,* 154 Md. 332 (1928) the Court found that the legislative enactments to that date had created no new offense, holding, at 335, "The offense still remains a common law offense." And in 1963 when *Fletcher v. State,* 231 Md. 190, was decided, the Court was of the opinion that "our statutes, Code (1957 and 1962 Supp.), Art. 27, Secs. 466 and 467, do not define the offense of receiving stolen goods, but merely prescribe the punishment therefor * * *." At 192. Since the only material amendment to the statutes as in effect at the time *Fletcher* was decided was to make the receiving of things to the value of $100 and upwards a felony, we think the opinion expressed in *Fletcher* pre-

---

6. In tracing the legislative history of the offense of receiving stolen goods we have omitted the provisions of the statutes dealing with jurisdiction of the various courts to try and determine cases under §§ 466 and 467. But see Code, Art. 27, § 467 (b), (c) and (d).

vails. It follows, therefore, that in this State there is only one crime of receiving stolen property. The elements of it, recognized by the Maryland cases are:

(1) the property must be received;
(2) it must at the time of its receipt, be stolen property;
(3) the receiver must have guilty knowledge that it is stolen property;
(4) his intent in receiving it must be fraudulent.

See *Fletcher v. State, supra; Dixon v. State,* 1 Md. App. 623. So in this jurisdiction receiving stolen goods is a separate and distinct substantive crime and not merely accessorial. While legislative enactments have not created a new offense or defined receiving stolen goods they have:

a) designated the property which is the subject of the offense—any stolen money, goods, or chattels or any bond, bill obligatory, bill of exchange, promissory note for the payment of money, bank note, paper bill of credit, or certificate granted by or under the authority of this State, or the United States, or any of them;

b) provided that the receiver may be prosecuted and punished, although the principal offender or offenders shall not have been convicted, and although the receiver shall have received the property from a person other than the person by whom such property shall have been stolen;

c) classified the crime as a felony if the value of the property received is to the value of $100 or upwards and as a misdemeanor if the value is under $100;

d) prescribed a punishment more severe if the value of the property is to the value of $100 or upwards—confinement for not more than

10 years—than if the value is under $100—
a fine of $200 or imprisonment for not more
than 3 years or both;

e) provided that all actions or prosecutions for
receiving property under the value of $100
shall be commenced within two years after
the commission of said offense.[7]

## THE INSTANT CASE

Willie Preston Jackson, Jr. was charged with two offenses of receiving stolen goods. Each charge was in the formula that he unlawfully received certain lately feloniously stolen property of a named person, well knowing the property to have been stolen. Both offenses were alleged to have been committed on 26 May 1969. In indictment 4004 the property was specified as "One Solid State Morse stereo, dark brown in color, Serial 3781, of the value of four hundred dollars current money; Two hundred 33⅓ LP records, of the value of seven hundred dollars current money." The owner was alleged to be Robert Cooper. In indictment 4005 the property was specified as "Fifty dollars current money; One portable television, of the value of One hundred fifty-nine dollars current money; One record player, of the value of Twenty-nine dollars and ninety-five cents current money." The owner was alleged to be Evelyn Taylor. Of the property specified in indictment 4004 the evidence adduced at the court trial in the Criminal Court of Baltimore connected appellant with only several of the records belonging to Cooper at a total value of $7. Of the property specified in indictment 4005 the evidence connected appellant with the television set valued at $149 and a record player valued at $11. But they were shown to be the property of Alvin Taylor. Evelyn Taylor was not mentioned or accounted for in any way. The court rendered a verdict of guilty of the 4th count, charging receiving stolen goods under each in-

---

7. As the punishment for receiving stolen goods under the value of $100 does not provide for confinement in the penitentiary, the period of limitations under Code, Art. 57, § 11 would be one year. But see Code, Art. 27, § 690.

dictment, finding as to 4004 that the goods received were under the value of $100 and as to 4005 that the goods received were over the value of $100. The docket entries as to 4004 read: "Guilty 4th count (under $100.00)," and as to 4005: "Guilty 4th count (over $100.00)." The court imposed a sentence of 3 years on each conviction, the sentence under 4005 to run consecutively with that under 4004.

In his brief appellant asserts that the 4th count of indictment 4004 charged that he "did feloniously receive stolen goods." He then points out that he was found guilty of receiving stolen goods under the value of $100. The assertion is factually incorrect. It was alleged in 4004 that he "unlawfully did then and there have and receive"; by Maryland Rule 712 b "[t]he word 'unlawfully' shall cover both a felony and a misdemeanor and it shall not be necessary to use the word 'feloniously' in charging an offense." In any event he draws no conclusion from his statement and observation and presents no argument relating to it. See Rule 1031 c 4. In argument before us it was suggested that a conviction of receiving stolen goods under the value of $100 on a charge wherein it was alleged that designated goods were over the value of $100 was improper. This point was not tried and decided below. Rule 1085. And see Rule 1046 f. In any event we find the conviction valid. We have found that there is only one offense of receiving stolen goods and not two separate crimes, one of receiving goods to the value of $100 and upwards and another of receiving goods under the value of $100. It is not a question of a greater or lesser crime for there is only one crime. That the goods proved to be received were of a value of under $100 simply authorized a maximum term of imprisonment of 3 years rather than 10 years and made the appellant a misdemeanant rather than a felon, important considerations, but not going to the validity of the conviction. The indictment set out the circumstances necessary to constitute the offense of receiving stolen goods which was all that was required. *Henze v. State, supra,* at 335. It al-

leged (1) that appellant received the property; (2) that the property had been stolen; (3) that appellant had guilty knowledge—"well knowing" the goods to have been stolen; and (4) that he had fraudulent intent—he "unlawfully" received the goods.[8] Thus it charged the offense of receiving stolen goods and it was this crime of which appellant was convicted. Compare *Turner v. State,* 242 Md. 408. The value of the goods is not an element necessary to constitute the offense; it did not have to be alleged nor proved as alleged any more than it is necessary to allege in the indictment the name of the thief or the person from whom the property is received. *Henze v. State, supra,* at 335. Cf. *Ham, et al v. State,* 7 Md. App. 474; *Love, et al v. State,* 6 Md. App. 639. Of course, the State must prove the value of the goods received to establish the punishment authorized and the classification of the offense. It did so here and the verdict as rendered made clear that punishment was to be under Code, Art. 27, § 467 (a).[9] See *Rhodes v. State,* 219 Md. 279.

Appellant attacks the conviction under indictment 4005 on the ground that the indictment charged that the goods received were the property of Evelyn Taylor while the evidence established that they were the goods of Alvin Taylor. As far as the record discloses this point was not tried and decided below.[10] Rule 1085. However, we do not believe that receiving stolen goods is a crime against possession. It is the larceny preceding the receiving that is against possession. Thus in receiving, unlike larceny, the ownerhip of the goods is not an essential element of the offense, although the fact that they were stolen is. Thus it is not necessary that the ownership of the goods received be proved precisely as alleged; proof that they

---

8. There is no statutory formula prescribed as sufficient to charge the offense.

9. We note that if the evidence showed that the goods received were under the value of $100 and that the date of the commission of the offense was without the two year period of limitations, the trial court could then entertain a motion to dismiss the indictment. See Maryland Rule 725.

10. Argument of counsel on motion for judgment of acquittal is not included in the record before us.

were stolen goods is sufficient. Here Alvin Taylor identified certain goods charged as received by appellant as his and as stolen from him. This was sufficient to prove the element that the goods were stolen; that they were shown to be the goods of Alvin Taylor rather than Evelyn Taylor was not fatal, although it would have been better had the State offered to amend the indictment. In any event the variance would not have been fatal under the rule of *idem sonans*. "When the name as written in the indictment may be pronounced in substantially the same way as the name given in the evidence, although such may not be the strictly correct pronunciation, the variance will not be regarded as fatal, unless the variant orthography is such as would be likely to mislead the defendant in preparing his defense. In other words, if two names may be sounded alike without doing violence to the power of the letters found in the variant orthography, the variance is immaterial." 5 Wharton's *Criminal Law and Procedure* (Anderson), § 2065, p. 218. In the dialect common to this area, Evelyn and Alvin may be sounded alike. At the trial appellant even asked the witness Taylor to spell his first name, but made no claim that he had been misled in preparing his defense. "In order to raise the objection that a variance in the name of a person as alleged and as proved is beyond the doctrine of *idem sonans*, it is essential that the question be seasonably raised during the trial." Id., § 2065 at p. 219. The question was not so raised here.

Appellant claims also that the State did not prove that he received all the goods he was charged with receiving. It is not required to do so with respect to the offense of receiving stolen goods more than it is required to do so in larceny, see *Sizemore v. State*, 5 Md. App. 507, or robbery, see *Love, et al v. State, supra.*

Appellant was also convicted of possessing narcotic paraphernalia (indictment 4006). He contends that the evidence was not sufficient to sustain this conviction or his two convictions for receiving stolen goods. To set them aside we must find that the judgment of the trial court

on the evidence was clearly erroneous within the purview of Maryland Rule 1086, and *Williams v. State,* 5 Md. App. 450.

Detective James McGee, Criminal Investigation Division of the Baltimore City Police Department, was cruising west in the 3200 block of Spaulding Avenue about 2:00 P.M. on 26 May 1969. He saw two men. Appellant was carrying a large object with a sheet around it. Following him at a distance of about 30 feet was a man carrying "what looked like a portable radio or portable record player in his hand. * * * Upon pulling up abreast of [Jackson], he spotted me, sat the merchandise down on the ground. The sheet slid away and you could observe a television. He proceeded to run north on Denmore Avenue where he was out of my sight." The other man was Alfred Arnett Smith.[11] McGee arrested him and he was taken to the Northwestern Station. On information received from Smith a warrant of arrest was obtained for Jackson. About 6:00 o'clock that afternoon McGee, with Detective Charles W. Scroggs, saw Jackson on the front porch of 3306 Spaulding Avenue. He was moving property—clothing, records, hats, shoes and other articles—out of the house. He "had a lot of property on the porch at that time." McGee told Jackson he had a warrant for his arrest and Jackson tried to break away. "We held on to him. He threw an object from his hand." The object was a white envelope. The police recovered the envelope. It contained a plastic barrel type syringe, a burnt bottle cap, two hypodermic needles and a spoon. These articles had been used and it was the opinion of McGee, based on his experience, that they "were used by people using narcotics as instruments to take the narcotics." While Jackson was being arrested Robert Cooper came up on the porch and said, "My place was burglarized five days ago and that is one of the records that

---

11. Smith was indicted with Jackson. By order of the court of 17 July 1969 Smith was transferred to Mt. Wilson Hospital for treatment of tuberculosis and by order of 26 August to Pine Bluff State Hospital.

came out of my apartment." He identified one of the records on the porch as his. Jackson was taken to the station and an inventory was made of the merchandise on the porch. It seemed that it had been brought from Smith's apartment in the house and Smith asked the police to take the rest of the merchandise from his apartment "so no one else could steal it." The door leading into the house was open and the door leading into Smith's apartment was open.

Robert L. Cooper identified one of the records found on the porch as his. It had been stolen from his house on 21 May. A $400 stereo set and "between six and seven hundred dollars' worth [were] taken."

Alvin Taylor identified the television set which Jackson was carrying in the sheet as his. He valued it at $149 and said he did not give anyone, and specifically Jackson, permission to take it. It and a record player had been stolen from his house. He identified the record player which Smith had been carrying as his.

Testifying on his own behalf Jackson denied he had broken into the house of Robert Cooper at 3302 Spaulding Avenue on 21 May or that he had taken any property out of that house. He denied he had broken into 3053 Spaulding Avenue on 26 May or that he took any property out of that house. He said he had stayed in Smith's apartment and on 26 May entered it with Smith's key which he then had. He said Smith had told him to take the television set to Smith's apartment. He denied he had a sheet over the set while he was carrying it but admitted running from the police; why he ran he did not know. Smith had not told him where he had gotten the television set. After he ran from the police he went to the barber shop of John Rice. Rice told him that Smith had called and to go to his house, get his things out before someone stole them. Asked why he went to the barber shop he replied, "One thing, I was making a habit of going over there often." He gave Rice the key to Smith's apartment and Rice "told me to come on, go around with him, help him get the things out, but he told me Alfred

[Smith] said for me not to go around there because the police had a warrant for me." Smith went anyway and was helping move the property when he was arrested. He claimed it was Rice who had the narcotic paraphernalia and that Rice took it from a dresser drawer in Smith's apartment. Smith was an addict. The goods in Smith's apartment "was supposed to be taken out and destroyed" on Smith's instructions, "so they wouldn't find it." On cross-examination he said he ran from the police because when the police approached he saw Smith turn around and walk the opposite way. "This was supposed to be his TV. When he walked away I didn't see no reason to stand around, explain. * * * I ran because I didn't have any explanation for it." He admitted that he had "main lined" drugs in 1968 but denied he was using drugs when arrested.

We have no difficulty in determining that the elements of the offense of receiving stolen goods were established by direct evidence or by rational inferences therefrom with respect to indictments 4004 and 4005. The records Jackson was carrying from Smith's apartment were proved to be stolen. Jackson had received them. The court could find that he had guilty knowledge that they were stolen and that his intent in receiving them was fraudulent when he admitted that he was taking them so they could be destroyed so "they [the police] wouldn't find them." The television set Jackson was carrying on the street was proved to have been stolen; his possession showed he received it; guilty knowledge could be inferred from his unexplained flight when accosted; and that the intent in receiving it was fraudulent was clear from all the circumstances. See *Weddle v. State,* 228 Md. 98 and *Carroll v. State,* 6 Md. App. 647. We observe that the fraudulent intent need not be *lucri causa* but merely hostile to the title of the true owner. *Fletcher v. State,* 231 Md. 190; *Kincer v. State,* 5 Md. App. 80.

The possession of narcotic paraphernalia was proved by the testimony of the police officer, if believed, and his credibility was a matter for the trier of fact.

We find that the evidence in law was sufficient to sustain each of the convictions. Therefore the trial court was not clearly erroneous in its judgments.

*Judgments affirmed.*