# JOHNNIE JONES *v.* STATE OF MARYLAND

[No. 70, September Term, 1968.]

*Decided December 3, 1968.*

The cause was argued before MURPHY, C.J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph G. Koutz* for appellant.

.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph R. Raymond, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted by the court sitting without a jury of robbery and sentenced to four years under the jurisdiction of the Department of Correction. He contends on this appeal that the lower court erred in failing to grant his motion to suppress evidence, said motion being based on the ground that he was illegally arrested, illegally searched, illegally questioned, and illegally confronted with evidence unlawfully seized by the police.

Appellant having expressly agreed that his pretrial motion to suppress evidence could be considered and determined during the course of the trial, the State introduced evidence to show that at approximately 12:20 p.m. on September 16, 1967, Roland Stickley, a Tennessee resident sojourning in Maryland, drove in his 1966 Chevrolet to a tavern in Baltimore City where he met a Negro man, whom he later identified as the appellant. Stickley testified that he agreed at appellant's request to drive him to a specified address; that they left the tavern together, got into Stickley's car, at which time appellant hit him over the head with a bottle, struck him with a stick, and thereafter (after breaking Stickley's ankle and leaving him on the ground) drove off in his car.

Stickley identified appellant as the robber-assailant at the trial over appellant's objection that such identification evidence was inadmissible on the ground that appellant had been illegally arrested. Stickley was then shown certain photographs by the State's Attorney which he identified as the car which had been stolen from him. The photographs were received in evidence over appellant's objection "based on the motion to suppress the evidence."

Stickley testified that shortly after commission of the crime, police arrived on the scene and, while he was awaiting an ambulance, he told the police "what happened," described his as-

sailant as a light colored Negro around 150 lbs., 5'9" in height, lean and rawboned, and told them that he had heard him referred to as "Jones" in the tavern. Stickley also described his car to the police and gave them its license number. Appellant objected to Stickley's testimony concerning what he told the police, but the court admitted it, apparently on the ground that since the legality of the arrest had been questioned by the appellant in his motion to suppress evidence, the information given by Stickley to the police would be admissible on the question of the existence of probable cause for appellant's arrest.

Stickley further testified, again over appellant's objection, that he viewed eight to ten photographs in Washington, D.C. and picked out appellant as his assailant; that he also viewed ten to twelve photographs in Baltimore and again picked out appellant as his assailant; and that after these identifications he attended a preliminary hearing in Washington, D.C., having been previously told by the police that they had apprehended one "Johnnie Jones." Stickley testified that he saw the appellant as they brought him into a crowded court room. The State then rested its case, at the conclusion of which appellant urged the court to rule favorably on his motion to suppress evidence, including suppressing the testimony of Stickley, on the basis that there was no showing that appellant had been legally arrested. The State argued that it was unnecessary to prove the legality of the arrest since no tangible evidence had been seized from the appellant at the time of his arrest, nor was any evidence introduced at the trial which resulted from the allegedly illegal arrest. The lower court agreed with the State and denied appellant's motion to suppress evidence.

Appellant then testified in his own behalf. He denied ever having seen Stickley or being with him in the tavern on the night of the crime. On cross-examination he admitted that he was in Stickley's car when arrested in Washington, D.C. but stated that he was in the car at the invitation of two friends, Bootsie Green and another man known to him only as Big Holly (neither of whose addresses he knew). He testified that at the time of his arrest he was reading in Stickley's car waiting for his two friends to return, the keys to the vehicle having been left by them in the ignition.

Appellant then called a police officer to testify on his behalf. The officer's testimony indicated discrepancies between the description of the robber given by the victim to the police, and his trial testimony relating thereto, as well as some differences involving the details of the crime's commission.

Maryland Rule 729a provides, *inter alia,* for the filing of motions to suppress evidence "whenever property is claimed in a court to have been obtained by an unlawful search or seizure," such motions ordinarily being filed on the ground, as set out in subsection (b) of the Rule, that such unlawfully obtained property "may be used as evidence at the trial." Appellant's motion to suppress did not specify any particular property or tangible items alleged to have been unlawfully obtained from him at the time of his arrest.

While we agree with appellant that the State failed to prove that he was lawfully arrested, we do not agree under the particular facts of this case that it was essential for the State to prove the legality of the arrest simply because the appellant had pending before the court a motion to suppress unspecified evidence on the ground that the arrest was illegal. It is well settled that an illegal arrest does not affect the jurisdiction of the court, is not ground for quashing the indictment, and does not preclude trial and conviction for the offense. *Matthews v. State,* 237 Md. 384; *Nadolski v. State,* 1 Md. App. 304. When evidence is not obtained as a result of an unlawful search and seizure, it is not rendered inadmissible simply by reason of the fact that the arrest was illegal. *Jones v. State,* 5 Md. App. 180. And where no tangible "fruits" of an illegal arrest or search are introduced against an accused at his trial, the alleged illegality of the arrest and of the subsequent search and seizure is ordinarily immaterial. *Baldwin v. Warden,* 243 Md. 326; *Walker v. State,* 237 Md. 516; *Butina v. State,* 4 Md. App. 312; *Thompson v. State,* 4 Md. App. 31; *Crosby v. State,* 2 Md. App. 578. In other words, the use of such unconstitutionally obtained evidence at the trial "is a prerequisite to a complaint successfully attacking a conviction resulting from a prosecution initiated by an illegal arrest." *Matthews v. State, supra,* at page 388, and cases there cited. Assuming the federal exclusionary rule articulated in *Wong Sun v. United States,* 371

U. S. 471, to be that any evidence obtained as a result of an illegal arrest is initially deemed tainted as the fruit of the poisonous tree, it has been held that that rule does not control prosecutions in State courts. *Dailey v. State,* 239 Md. 596; *Prescoe v. State,* 231 Md. 486; *Butina v. State, supra; State v. Hill,* 2 Md. App. 594. Even if an arrest be illegal, therefore, testimony relating to the identification of the accused at a police lineup, or in a police station, or an identification made at trial is not inadmissible as the fruit of an illegal arrest. See *Hartley v. State,* 4 Md. App. 450; *Parks v. State,* 4 Md. App. 432; *Tender v. State,* 2 Md. App. 692.

We think it clear that the only tangible evidence produced against appellant by the State in the presentation of its case-in-chief was the photographs of Stickley's car. But as the record makes clear the introduction of these photographs was for the purpose of having the victim identify the vehicle which in his testimony he stated was stolen from him by the appellant. The State did not offer any evidence to show that appellant had been arrested in Stickley's vehicle, that evidence having been elicited from the appellant on cross-examination after he had testified in his own behalf denying that he had ever seen Stickley or that he knew anything of the crime. Under these circumstances, and considering the State's limited evidentiary use of the photographs of the victim's car, we do not believe that the photographs would have been subject to suppression under appellant's motion. While it may have been that appellant's arrest in Stickley's car was illegal, and that, as to any tangible items seized from the car or from his person at that time, he would have had standing to object (see *Mancusi v. DeForte,* 392 U. S. 364), we see no violation of appellant's Fourth Amendment right to be secure against unreasonable searches or seizures for the police to take a photograph of Stickley's car, and for the State to introduce that photograph at the trial for the purpose of showing that the victim, who testified that his car was stolen from him by the appellant, identified the car depicted in the photograph as being his property.

Where a motion to suppress has been filed and is to be heard during the course of the trial, the State's Attorney should, where he does not intend to prove the legality of the arrest,

or to offer any tangible evidence seized as a result of the arrest, so advise the court at the outset of the trial so that the court may be governed accordingly when making its rulings on the admissibility of evidence. In the present case, even if Stickley's testimony as to what he told the police shortly after the commission of the crime was not admissible as part of the State's case to prove probable cause for the arrest—the State not intending to prove the legality of the arrest — we do not think its admission in this case prejudiced the appellant in any way.

Nor do we agree with the appellant that the evidence was insufficient to sustain his conviction. The discrepancies between the victim's testimony at trial and what he told the police at the scene of the crime, went to the weight of the evidence and to the credibility of the witness and, as such, were matters for the trier of facts. If believed, the victim's testimony, including his positive identification of the accused as the perpetrator of the crime is sufficient to support the conviction. It is obvious in this case that the trier of fact believed the victim's testimony and disbelieved that of the accused.

*Judgment affirmed.*