## NOAH WESTLEY POPE *v.* STATE OF MARYLAND

[No. 431, September Term, 1968.]

*Decided August 13, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Alvin Sellman* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant was convicted of armed robbery by Judge Walter M. Jenifer, sitting without a jury in the Circuit Court for Baltimore County. A sentence of eight years was imposed.

Mrs. Bernice Walsh, owner of a small grocery store, testified that at approximately 9:00 a.m. on a Sunday morning, two men walked into her store and asked for sandwiches. When told that she did not serve sandwiches, one of them produced a pistol and demanded her money. She opened the cash register and handed them bills and change in the approximate amount of thirty dollars. She observed them leave in an automobile and immediately telephoned the police, giving them a description of the car, its license number and a general description of the two men. Appellant and Eugene Nickens were arrested later that afternoon and charged with the armed robbery. Mrs. Walsh identified the appellant in a police-conducted lineup the next day; at a preliminary hearing held later; and at the trial below.

In this appeal, the appellant contests the constitutional legitimacy of the lineup. He concedes that the police advised him of his right to have an attorney present and that, if he could not afford one of his own selection, the State would appoint an attorney to represent him at the State's expense. He also admitted signing a so-called waiver sheet upon which his rights with respect to an attorney were stated but asserts that he did not understand the meaning of the term "waiver."

Detective Gambrill of the Baltimore County Police Department testified that he advised the appellant that he would be placed in a lineup the next day at which time he read to him a "lineup waiver form prepared by the

Police Bureau" and that thereafter the appellant read the form and "at the time he stated he waived his rights and signed it." The officer further testified that the appellant "stated that he hadn't done anything wrong and did not need an attorney."

The appellant took the stand for the sole purpose of relating the events surrounding the lineup and asserted that he did not understand the definition of the word "waiver" and that he had not read the form which he signed. The appellant was thirty years old and stated that he had completed the eleventh grade in school.

Another police officer thereafter took the stand and substantially confirmed Detective Gambrill's testimony.

The trial judge found as a fact that "the defendant intelligently, voluntarily, and of his own free will and at his own direction eliminated the constitutional rights of having a lawyer present at the lineup." See in this connection, *Palmer v. State*, 5 Md. App. 691, 701. On the record before us, as outlined above, we cannot say that the trial judge was clearly erroneous in his holding. Md. Rule 1086; *Robinson, Austin and Lothes v. State*, 5 Md. App. 723, 727.

It is next contended that "the appellant was subjected to a lineup proceeding that in every way violated fundamental principles of fairness and legality." We disagree.

The record shows that a five-man lineup was conducted; that the appellant and Nickens, who was eighteen years old, were two of the five men; that the other three men were police officers and a jail attendant; and that the appellant was permitted to select his own position in the lineup. Mrs. Walsh testified that the police made no suggestion of any nature to her concerning the men in the lineup; that she immediately identified the appellant as the number three man in the lineup; that although their heights and ages varied somewhat their complexions were similar except that the number one man was slightly darker. We have carefully examined the record and considered the appellant's arguments on this issue but we

cannot disagree with the findings of the trial judge that the lineup was conducted with "fairness and objectivity." In any event, Mrs. Walsh, in making her courtroom identification, testified, in response to a direct question on cross-examination, that she could identify the appellant in the courtroom because he was one of the men who robbed her store and not because she had seen him in the lineup or at the preliminary hearing. It is apparent, therefore, that her in-court identification of the appellant "had a source independent of the [lineup] confrontation." See *Smith v. State*, 6 Md. App. 23, 30.

It is finally contended that the Court erred when it refused to compel an accomplice to testify on appellant's behalf. We find no merit in this contention.

The appellant did not take the stand on the question of guilt or innocence but did call to testify on his behalf, Eugene Nickens, his accomplice in the robbery, who had pleaded guilty to armed robbery before another judge earlier in the day. When called, Nickens, who was accompanied by his counsel, announced: "I don't want to take the stand to testify." The trial judge thereupon directed him to take the witness stand and be sworn. His counsel and the State's Attorney agreed that, although he had pleaded guilty to the armed robbery, there were other counts in the same indictment which had not been disposed of by way of stet or nol. pros. and, according to the State's Attorney, "there may be other offenses." When asked by the trial judge why he did not want to testify, Nickens replied: "I wasn't quite prepared for this until the last minute. I did not come in until the last minute. I was not sure anyway. I was told I might have to come in." The Court then stated that the witness "hasn't given me any basis" for legitimately refusing to testify and directed counsel for the appellant to begin his questioning of the witness.

After asking several preliminary questions to which the witness responded, counsel for appellant asked the following question: "Alright, now, directing your atten-

tion to August 11, 1968, were you in the company of my client, Noah Westley Pope anytime on that particular day?" The State's Attorney objected and after an extended colloquy between the Court and counsel, the trial judge stated: "I think the question you ask would tend to incriminate him."

Whereupon counsel for appellant advised him as follows:

> "You just heard Judge Jenifer rule that Mr. Nickens does not have to testify as to any evidence that could be incriminating against him * * * Do you understand that?"

Counsel further stated to appellant:

> "Now, I do have the right to try to ask him questions, and of course, if there are objections by his attorney, the court in all likelihood, [will] sustain these objections; therefore, his testimony would not be able to come in for whatever weight it might be given. Knowing this, do you want any questions to be asked, or do you prefer him [to] step down from the witness stand."

Appellant replied: "No questions."

In *Royal v. State*, 236 Md. 443, the Court of Appeals set forth the procedure to be followed in invoking the privilege against self-incrimination (p. 447):

> "The proper course of procedure is for the witness to wait until a question has been propounded which tends to incriminate him and then decline to answer it. Likewise, if further interrogation is pressed as is often the case, the witness should answer the questions, one by one when propounded, or claim his privilege to decline answering; otherwise, since it cannot be known beforehand which he will do, the court would be unable to rule whether an answer to the particular question might incriminate the

witness. This, of course, is a matter for the trial judge to determine as and when each claim of privilege is invoked."

It is apparent that appellant's counsel below was aware of this procedure for, in general terms, he so advised the appellant in open court. He, of course, had a right to persist in his questioning of Nickens and to have the court pass on whether the witness could be compelled to respond to each question as propounded. This, he failed to do, and, accordingly, he cannot now complain that the court erred in the course it pursued.

Although it has repeatedly been held that "the witness himself has to personally assert the privilege, the cases show this may be done by his actions in not answering the question even though he himself did not raise the point of privilege." *Farmer v. State,* 5 Md. App. 546, 551. Thus, we find no merit in appellant's contention that Nickens failed to state "that he was exercising the privilege against self-incrimination." We are of the opinion that the answer to the single question propounded to Nickens could have incriminated him since there were charges still pending against him which the State could have prosecuted (see *Poling v. State,* 6 Md. App. 45, 48-49). Accordingly, we find no error in the trial judge's refusal to require Nickens to answer the question.

*Judgment affirmed.*