## RONALD EARL COWARD *v.* STATE OF MARYLAND

[No. 410, September Term, 1969.]

*Decided August 11, 1970.*

128

The cause was submitted to MURPHY, C.J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Leonard S. Friedman,* with whom was *John D. Hackett* on the brief, for appellant.

*Stanford D. Hess, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Harriette Cohen, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Ronald Earl Coward, was convicted on August 8, 1969 in the Criminal Court of Baltimore in a non-jury trial by Judge Irvine H. Rutledge of rape. Appellant was sentenced to twelve years under the supervision of the Department of Correctional Services. On appeal he presents four questions, namely:

1) Was the evidence sufficient to convict?
2) Was the situs of the crime as alleged in the indictment sufficiently proven?
3) Was the identification by the victim of the appellant at the lineup tainted?
4) Was the appellant's statement to the police improperly admitted?

On the evening of May 17, 1969, Miss Gloria Moss visited a friend in West Baltimore until 11:00 p.m. She left her friend's home and stood on the corner of Edmondson Avenue and Mt. Holly Street to await the arrival of a bus to carry her home. A red GTO Pontiac convertible parked at the curb in front of Miss Moss and a man alighted, grabbed Miss Moss by the arm and forced her into the Pontiac. Miss Moss was forced to sit between the driver and the passenger who had forced her into the automobile. The automobile was driven west into a wooded area near the Wakefield Apartments where the automobile was parked and the passenger alighted. The driver then forced Miss Moss into the back seat of the car and after threatening to break her neck had sexual intercourse with her. After the attack the passenger returned to the automo-

bile and sat in the rear seat. The car was then driven from the scene and as it slowed for a traffic light on Gwynns Falls Parkway Miss Moss, now seated in the passenger seat in the front, jumped from the automobile and escaped. As the automobile drove away she read the license plate as CH 4303. Miss Moss ran to a service station and called the police. She submitted to a gynecological examination at the Pine Street station, which revealed the presence of live sperm. Miss Moss informed the police and testified at trial that the Pontiac in which she was attacked had a red scarf with a gold clamp hanging from the rear view mirror. At the trial she made a positive in-court identification of appellant as the driver of the Pontiac and the perpetrator of the attack upon her.

I

The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Jones v. State,* 5 Md. App. 180. Rape is defined at common law as the act of a man having unlawful carnal knowledge of a female over the age of ten years by force without the consent and against the will of the victim. *Hazel v. State,* 221 Md. 464. The testimony of a victim, if believed, including her positive identification of the accused as the perpetrator of the crime, is sufficient to support a conviction. *Jones v. State,* 5 Md. App. 489. The trial court had before it the testimony of Miss Moss that after being forcibly abducted and threatened with bodily harm she was forced to have intercourse with her attacker whom she identified as the appellant. In addition, she was able to describe, with accuracy, the red scarf hanging from the rear view mirror of appellant's car when it was recovered by the police and the license plates attached to it. There was therefore sufficient evidence from which the trial court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.

## II

Appellant next contends that the State failed to prove the situs of the crime as alleged in the indictment. Appellant does not allege that the trial court lacked jurisdiction to try the case. This contention was not raised at trial and the issue was not decided by the lower court. Therefore the issue is not properly before us on appeal. Maryland Rule 1085. There was no testimony adduced at trial that indicated the attack took place outside of the city limits of Baltimore. From the testimony of Miss Moss the trial court could find that the attack took place in the City of Baltimore, and the State thus produced sufficient evidence to prove the situs of the offense as alleged in the indictment.

## III

On direct examination at trial Miss Moss stated that she could positively identify appellant as the perpetrator of the attack upon her. During direct examination Miss Moss made no mention that she had attended a lineup. On cross-examination it was revealed that Miss Moss's first contact with the appellant subsequent to the attack took place at a lineup conducted a day and a half after the attack at the Western District Police Station. She selected appellant as her attacker from the lineup. On redirect examination the State introduced into evidence a photograph of the lineup at which Miss Moss had identified the appellant. She testified that she was not told anything prior to the lineup about the lineup itself. There was no mention of the position numbers in which those participating in the lineup were to stand. On recross-examination she stated that the day of the lineup two officers came to her house and informed her that they wanted her to attend a lineup that evening but did not tell her who would be in the lineup. When she arrived at the station house she was met by Officer James Wells of the Baltimore City Police Department. He explained to her how a lineup was organized and not to be afraid. He then informed her that the police had picked up the driver of

the car and wanted to see if she could identify him. She then attended the lineup and selected the appellant. Appellant does not allege that the lineup itself was in any manner unfairly conducted. Appellant contends that the statement of Officer Wells to Miss Moss concerning the driver of the car tainted the lineup identification and that the taint rendered the in-court identification of appellant by Miss Moss inadmissible.

In *Smith and Samuels v. State,* 6 Md. App. 59 we discussed the procedure to be used in the admissibility of pretrial identification. After finding that it was not the obligation of the State to put before the trier of fact evidence of a pretrial identification we stated that the rule does not bar the defendant from cross-examining the State's witnesses on the facts of the pretrial identification procedures utilized. Such evidence so elicited by the defendant is proper as affecting the weight of the identification evidence produced by the State and the credibility of the identifying witness, matters for the trier of fact. *Smith and Samuels v. State, supra,* at 69. See also *Miller v. State,* 7 Md. App. 344. Thus the testimony elicited from Miss Moss by the defense affected the weight of the in-court identification rather than the admissibility thereof and the appellant's contention is therefore without merit.

Appellant further contends that the trial court erred in permitting Miss Moss to answer a direct question as to the source of her identification of appellant. The question which appellant objected to was asked at trial by the Assistant State's Attorney as follows: ". . .Now, I am going to ask you on what you are basing your identification in court, here, today? Are you basing it on the lineup, or are you basing it on the night of the occurrence?" This Court was faced with similar testimony in *Pope v. State,* 7 Md. App. 533. There we held that the prosecutrix's response to a direct question as to the source of her identification was enough to establish an independent source for her identification. In *Pope* the Court was not confronted with the specific challenge raised by the appellant here, but, in accepting the answer to a similar question as suf-

ficient proof of an independent source, we approved the asking of such a question. It is not only permissible but also desirable that the trial court have before it as much specific information as possible before making its determination on the admissibility of identification evidence. The asking of specific questions as to the source of a witness's identification is advantageous in the trial court's determination of admissibility. We find no error on the part of the trial judge in permitting the challenged question to be asked of Miss Moss.

### IV

Officer Wells upon being notified of the suspect's license number CH 4303 checked the motor vehicle department's records and found that the plates were attached to a Ford. Miss Moss then informed the police the plates may have been HC 4303 and Officer Wells determined that these plates were attached to a red GTO Pontiac which was in the possession of the appellant. Officer Wells went to appellant's home and inquired about the location of the vehicle. After inspecting the vehicle, Officer Wells returned to appellant's home and placed him under arrest and gave him the warnings required in *Miranda v. Arizona*, 384 U. S. 436. Appellant contends that the trial court erred in permitting Officer Wells to testify as to his first conversation with the appellant. Appellant maintains that this testimony was improper in that Officer Wells did not give the appellant his *Miranda* warnings prior to the first conversation.

Officer Wells testified that after being assigned to the case he talked to Miss Moss, the prosecutrix. He obtained information from her which lead him to trace the ownership of a certain license plate. The records revealed the car was owned by Ronald Coward, the appellant. Officer Wells then went to the appellant's home and took the following action as revealed by the trial record:

"Q Now, Officer Wells, at the time you arrived at the house to ascertain the owner of the

automobile, did you have any intention of placing that owner under arrest?

A At that time, I had no basis to place him under arrest.

Q When you arrived at the house and saw Mr. Coward, was he under arrest?

A No, he was not.

Q And, in fact, was he, at that point, even a likely suspect in this rape case?

A Not at all.

Q At that point, what was the basis of this investigation?

A I wanted to try to relate the information that I had received from Miss Moss, and see if the automobile that was listed in the name of Ronald Coward could have possibly been the automobile used in the offense.

Q So, you were more interested in the automobile, is that correct?

A That is correct."

\* \* \* \*

"Q You may continue with what occurred when you talked to Mr. Coward.

A Upon my arrival at 2844 Ellicott Drive, I identified myself as a police officer, and spoke to Mr. Coward, and asked him if he was Ronald Coward, and he stated that he was. And I asked him if he owned a Pontiac automobile, which he stated he did. I asked him where the automobile was at that time, and he stated that it was in the 2900 block of West North Avenue, awaiting removal by tow truck. He had had automobile trouble about 11:00 a.m. that day. I asked him if he had had the automobile in his possession during the time in question of the offense that we were investigating, and he stated that he had. And I asked him if he had any-

one with him in that automobile at that time, and he stated he had not."

\* \* \* \*

"THE WITNESS: I asked him if he had had an automobile in his possession, and he stated that he had had it from about 10:00 p.m. on the 16th until he went to his girlfriend's house past midnight on the 17th, or the morning of the 17th.

BY MRS. COHEN:

Q And what else did you ask him if anything?

A I asked if he, at any time, had anyone with him, and he stated that he did not. And I asked him if it would be okay if I went to see his automobile, and he stated that it would be all right. And I advised him that I might have to come back and ask him further questions, and if it would be okay, and he said it was.

Q Did you advise him why you were asking him these questions —

A I told him that it was in reference to a complaint that involved an automobile that is similar to the one that was listed to him. I didn't know at that time if it was the automobile, in fact, because I hadn't seen it.

Q I see. And, then, what happened next?

A I left his home address and went to the 2900 block of West North Avenue to observe the Pontiac, . . ."

In *Carrington v. State,* 1 Md. App. 353, we stated that under *Miranda* persons who are not in custody or under restraint may be questioned and statements made at that time are admissible.

We find from the testimony of Officer Wells that the appellant was not "in custody" at the time of the original questioning by Officer Wells and therefore appellant's statements made at that time were admissible. *Gaudio and Bucci v. State,* 1 Md. App. 455; *Jackson v. State,* 8

Md. App. 260; *United States v. Hall,* 421 F. 2d 540 (2nd Cir. 1969).

*Judgment affirmed.*