536 A.2d 718

Robert Thomas WILDBERGER

v.

STATE of Maryland.

Lisa Rose WILDBERGER

v.

STATE of Maryland.

Nos. 700, 701, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Feb. 4, 1988.

108

James L. Mann, Jr. (DiNenna, Mann & Breschi, on brief), Towson, for appellants.

Patricia Storch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Barbara Jung, Asst. State's Atty. for Baltimore County, on brief, Towson), for appellee.

Argued before GARRITY, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Robert Wildberger was convicted at a bench trial in the Circuit Court for Baltimore County of various sexual offenses against his minor daughter. Lisa Wildberger, his wife, was convicted of being an accessory after the fact as to those sexual offenses and also of hindering a police officer. Both noted appeals. This Court granted their motions to consolidate those appeals for brief and argument. They present these questions:

—Was the evidence legally sufficient to identify Robert Thomas Wildberger as the perpetrator of sexual offenses on his daughter?

—Was the evidence legally sufficient to convict Lisa Rose Wildberger as accessory after the fact?

—Was the evidence legally sufficient to convict Lisa Rose Wildberger of hindering?

—Did the court commit reversible error in denying appellants' motions to suppress evidence secured by search and seizure?

## APPEAL OF ROBERT WILDBERGER
### —Sufficiency of the Evidence—

■ Appellant, Robert Wildberger, argues that the evidence was legally insufficient to identify him as the perpetrator of the sexual offenses upon his daughter. The test we apply to review the sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1972). In a non-jury trial, due regard will be given to the opportunity of the judge to evaluate the credibility of witnesses, and the judgment will not be set aside unless clearly erroneous. Rule 1086. This appellant questions the evidence relative to the sexual molestation of the child, but our independent review of the evidence convinces us that the trial judge did not err in finding the molestation did in fact take place. Appellant further contends that even if the evidence may have proved his daughter had been sexually abused, there was no evidence, direct or circumstantial, to show that he committed the offense. We do not agree.

■ The evidence from two separate laboratories established that semen and spermatozoa were found two centimeters deep in the rectal tract of the two-year-old girl. Expert testimony established that the presence of such seminal

fluid could have occurred recently or any time within 72 hours before the examination.

Appellant contends that he was not the only male who was with the child during the time in question. While not untrue, the statement is misleading. The family visited the maternal grandparents' home during the day, in part so that Lisa Wildberger could help take care of her father, who was ill. There was testimony that the grandfather, the only other male anywhere near the child during the 72–hour period, was a "very sick man." There is no evidence that the child was with anyone besides the child's parents and maternal grandparents during that period of time. Other than the visits to her grandparents' house, where the child and her grandfather were never alone, the evidence indicated that the father was the only male near the child during the 72–hour period.

Robert Wildberger admitted that, as a result of a hospitalization of his daughter for bronchial spasms the month before the investigation, hospital officials accused appellants of sexually abusing their daughter. Mr. Wildberger said the child often slept in their bed with them, and she had done so the night before the morning arrival of police which led directly to these charges. His wife told him that morning that their daughter was not wearing the panties she had worn to bed. Wildberger said he believed his daughter must have gotten up to go to the potty and forgotten to put them back on. The officers testified that when Lisa Wildberger was led from the house under arrest, she yelled to her husband, "Bob, don't let them check her, you know what they'll find."

The trier of fact is responsible for judging the credibility of witnesses and weighing any conflicts presented by the evidence. *Bryant v. State,* 49 Md.App. 272, 283–84, 431 A.2d 714, *cert. denied,* 291 Md. 772 (1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). Circumstantial evidence is sufficient to support a conviction if the circumstances permit rational inferences from which the trier of fact could be convinced beyond a reasonable doubt

of the guilt of the accused. *Finke v. State,* 56 Md.App. 450, 468, 468 A.2d 353 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218, *cert. denied,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984).

The court made a finding of fact that the two-year-old child had been the victim of sexual abuse, and that Robert Wildberger did commit that abuse. We hold these findings are not clearly erroneous and they are sufficient to meet the *Jackson* test. 443 U.S. at 319, 99 S.Ct. at 2789.

## APPEAL OF LISA WILDBERGER
### —Sufficiency of the Evidence—

 Lisa Wildberger appeals her conviction as accessory after the fact. An accessory after the fact is one who, knowing that a felony has been committed, harbors and protects the felon or renders him or her assistance to elude punishment. *Cooper v. State,* 44 Md.App. 59, 64–65, 407 A.2d 756 (1979); *Robinson v. State,* 5 Md.App. 723, 728, 249 A.2d 504 (1969). Where the alleged principal is tried first, or tried at the same time as the alleged accessory, the accessory may not be convicted of a greater crime than the principal. *Jones v. State,* 302 Md. 153, 159, 486 A.2d 184 (1985).

This appellant first contends that if the sexual offense convictions of Robert Wildberger as principal are overturned, the sexual offense convictions of Lisa Wildberger as accessory must be overturned. In view of our conclusions relative to the Robert Wildberger conviction, we will not dwell on this point further. In any event, the evidence, viewed in the light most favorable to the State, was sufficient to support Lisa Wildberger's convictions as an accessory after the fact to both child sexual abuse and second degree sexual offense. *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980). We explain.

 A month before the child abuse investigation in this case, Franklin Square Hospital reported that the child had been sexually abused. If she had not known before, Mrs.

Wildberger was then alerted. Mrs. Wildberger explained her daughter's "reddened upper thighs," and "symmetrical," "real dark red discoloration" and "swelling" of her vaginal lips [1] as an allergic irritation to soap used on her training pants. When asked how the child was clothed during the night before the morning arrival of the police, Mrs. Wildberger said the child had her nightgown on, but nothing else.[2]

Mrs. Wildberger denied the officers' testimony that she had yelled to her husband not to let the police examine the child because of what they might find. She claimed she only told her husband to get her a lawyer. A Baltimore County Department of Social Services representative testified that Lisa Wildberger gave her three different explanations for the presence of semen in the child's rectal tract. Mrs. Wildberger first said it was only mucous from diarrhea. When told the finding was the result of a scientific test, she said the child had sat on ejaculate that was on their bed. A few weeks after the trial, Mrs. Wildberger told the caseworker that everyone who testified had lied, and the hospital had made up the finding.

Judging credibility of witnesses is one of the functions of the trial court, and it may disbelieve exculpatory statements of an accused. *Bird v. State,* 231 Md. 432, 436, 190 A.2d 804 (1963). Lisa Wildberger's testimony provided sufficient reason for the court to conclude that she knew about the sexual abuse and was trying to protect her husband. *See Robinson v. State,* 5 Md.App. 723, 249 A.2d 504 (1969). The trial judge found that Lisa Wildberger knew her husband had committed a sexual offense on their daughter and attempted to conceal, protect and render him assistance. We cannot conclude on our independent review that the trial judge was clearly erroneous.

---

1. As described by the investigating officer.

2. She did not report, as Robert Wildberger testified, that she had noted that the child had been put to bed with underpants, but was not wearing them in the morning.

## —Hindering—

██ In order to establish the crime of obstructing or hindering a police officer, the State must prove certain elements beyond a reasonable doubt:

1. A police officer engaged in the performance of a duty;

2. An act or omission by the accused which obstructs or hinders a police officer in the performance of that duty;

3. Knowledge by the accused of facts comprising element # 1; and

4. Intent to obstruct or hinder the officer by the act or omission constituting element # 2.

*Sibiga v. State,* 65 Md.App. 69, 80–81, 499 A.2d 484 (1985).

Officer McCaskill testified that, in response to a report of suspected child abuse of the Wildbergers' nephew, he went to their apartment on the morning of July 24, 1985, and explained to them in detail why he was there. He asked to examine the boy and appellants raised no objections. Upon discovering the marks and bruises on the nephew, McCaskill called his supervisor who subsequently called in a female officer to examine the little girl. He said that when Mrs. Wildberger became upset about them examining the daughter, she was "directed and advised that if she did not calm down and allow us to look at [her daughter], she would be subject to arrest for interfering." He said she continued to interfere and tried to stop the female officer, Officer Fisher, from looking at her daughter and was, therefore, placed under arrest.

██ Sergeant Cooper testified that when Officer Fisher attempted to begin examination of her daughter, Mrs. Wildberger moved toward Officer Fisher, saying, "No God-damn cop is going to check my daughter." Officer Fisher testified that, even after Mrs. Wildberger had been advised that she would be arrested if she interfered, she "became very objectionable," "started screaming profanities," and "moved towards me in a very offensive way."

Mrs. Wildberger admitted she had become excited and raised her voice but denied that she moved toward Officer Fisher. She claimed she remained in the same spot, standing by the dining room table.

The contradiction in testimony raised an issue of fact to be determined by the trier of fact, the judge of the credibility of the witnesses. *Watson v. State*, 35 Md.App. 381, 386, 370 A.2d 1149 (1977). On the charge of intentionally interfering with a police officer in the performance of his duty, the court ruled that it believed that Sgt. Cooper, "who appears to this court to be a very patient man," placed Mrs. Wildberger under arrest because she made a move toward, or touched, Officer Cooper after he warned her to step back and not interfere. We conclude the evidence relative to hindering is sufficient.

### —Motion to Suppress—

Appellants claim that the search and seizure of their daughter by the police and hospital personnel violated the Fourth Amendment of the United States Constitution and any evidence obtained thereby should be suppressed.[3] They argue that there were no reasonable grounds to believe that she was in immediate danger from her surroundings and that her removal was necessary for her protection. Finally, appellants claim removal of the child from the home without court approval is only permitted in accordance with Md. Fam.Law Code Ann. § 5–906 (1984, 1987 Cum.Supp.).[1] We disagree.

---

**3.** The Fourth Amendment provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
U.S. Const. amend IV.

**4.** Appellants do not challenge the constitutionality of Md.Fam. Law Code Ann. §§ 5–905 and 5–906 which permit the examination and removal of a child under certain circumstances.

■ The Fourth Amendment applies to visual inspections conducted by State officials of unclothed children for evidence of child abuse. *Darryl H. v. Coler,* 801 F.2d 893, 899–900 (7th Cir.1986).[5] Such a search and seizure is constitutionally prohibited, in the absence of parental consent, if it is unreasonable. *Coler,* 801 F.2d at 900. What is constitutionally reasonable will vary according to the context of the search. *Coler,* 801 F.2d at 900. In *Coler,* the Court said:

" 'The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' "

*Coler,* 801 F.2d at 902–03, quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

The Supreme Court has stated that determining the reasonableness of a search involves two basic inquiries: (1) was the action "justified at its inception"; and (2) was the conduct of the search "reasonably related in scope to the circumstances which justified the interference in the first place." *Coler,* 801 F.2d at 903, quoting *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889 (1968).

In the case *sub judice,* the police received an anonymous call of possible abuse of a young male child. An officer responding to the call went to appellants' home, identified himself, explained why he was there and requested to see the young boy. It was at this time that the officer first

---

5. *Coler* involved two cases which were consolidated on appeal. In one of them, *Darryl H. v. Coler,* 585 F.Supp. 383 (N.D.Ill.1984), the issue was raised at trial as to whether the parents had standing to bring suit on behalf of themselves, based on the alleged Fourth Amendment violation due to the search of their children. The Court, having found that the children's Fourth Amendment rights had not been violated, did not address the issue. It was also not discussed on appeal.

saw the young female child. Appellants did not object to the officer's request to see the boy and proceeded to bring the child into the room. The officer noticed several looping marks on the boy's legs and a bruise on his face. Upon pulling the boy's pants down, the officer noticed scratches on his bottom. After examining the boy, the officer contacted his supervisor and a detective in the Youth Services Division. Shortly thereafter, two more officers arrived at appellants' house. They requested a closer examination of the boy and asked to examine the girl and any other children in the home. Mrs. Wildberger objected to any examination of the female child. Upon removal of Mrs. Wildberger from the room, a female officer was able to undress the girl and check for possible abuse.

■ Based on the facts in this case, we hold that the search of the girl was reasonable under the Fourth Amendment. Upon confirming possible abuse of the boy, the officers were required by law to determine the condition of any other child in the same household. Md.Fam. Law Code Ann. § 5–905(b)(2)(ii) (1984, 1987 Cum.Supp.).[6] Although the girl showed no visible signs of abuse, she was wearing a

---

**6.** Section 5–905 provides in pertinent part:

"(a) **Initiation.**—(1) Promptly after receiving a report of suspected abuse, the local department or the appropriate law enforcement agency, as appropriate, or both, if jointly agreed on, shall make a thorough investigation to protect the welfare of the child or children.

(2) Within 24 hours after receiving the report of suspected abuse, the local department or the appropriate law enforcement agency shall:

(i) see the child;

(ii) attempt to have an on-site interview with the child's caretaker; and

(iii) decide on the safety of the child, wherever the child is, *and of other children in the home.*

"(b) **Scope.**—The investigation shall include:

(1) a determination of the nature, extent, and cause of the abuse, if any; and

(2) if the suspected abuse is verified:

(i) a determination of the identity of the person or persons responsible for the abuse;

set of pajamas. In light of the additional markings found on the boy's buttocks, we hold that the search of the girl was reasonably related to the strong possibility that the children were victims of child abuse.

Appellants' second argument is that their Fourth Amendment rights were violated by the removal of the female child from the home without a court order. They claim that such removal must be done in accordance with Md.Fam. Law Code Ann. § 5–906 (1984, 1987 Cum.Supp.), and that in this case it was not. Section 5–906 provides in pertinent part:

> "(a) **Right of entry.**—If a representative of a local department is conducting an investigation under this subtitle, the representative may enter the household, if the representative:
>
> (1) previously has been denied the right of entry; and
>
> (2) has probable cause to believe that a child is in serious physical danger and that an emergency exists."

We agree with appellants that § 5–906 does not apply to this case. But that does not mean that the female child was necessarily illegally removed from her home.

Maryland Cts. and Jud.Proc. Code Ann. § 3–814 (1974, 1984 Repl.Vol.), provides for the removal of the child from the home without a court order. Section 3–814(a)(3) states that a child may be taken into custody "[b]y a law enforcement officer or other person authorized by the court if he has reasonable grounds to believe that the child is in immediate danger from his surroundings and that his removal is necessary for his protection...."

In the case *sub judice*, upon examining the girl, the officer noticed a redness in the area of the child's vagina and what looked like pubic hairs. That, let alone the young boy's marks and bruises, provides more than reasonable grounds for the belief that the girl was in immediate danger

(ii) a determination of the name, age, and *condition of any other child in the same household....*" (Emphasis added.)

and removal was necessary for her protection. Thus, we hold that the girls' removal from the home in accordance with § 3–814 was not in violation of the Fourth Amendment.[7]

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

7. On appeal, appellee argued that appellants have no standing under the Fourth Amendment to protest the search of their child. The issue was first raised at the hearing on the motion to suppress. At that time, the court made no finding but said it was assuming for the purposes of the hearing that they had standing. Under Rule 1085, an issue raised below but not decided by the trial judge ordinarily cannot be raised on appeal. *Burdette v. LaScola*, 40 Md.App. 720, 733, 395 A.2d 169 (1978). Although we do not decide that issue today, we question whether appellants have a sufficient legitimate expectation of privacy in their child to maintain a Fourth Amendment challenge on their own behalf. There is no doubt that a child who has been searched can raise the Fourth Amendment in challenging that search. We also recognize that parents can maintain a Fourth Amendment action on behalf of their child. What must be considered in cases like the one *sub judice* is the parents' Fourteenth Amendment right that their familial relationship will not be subject to unwarranted state intrusion. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). Against that, we must balance the State's obligation to protect the lives of those members of the community to whom it has a very special responsibility, the young. In other words, does the parents' loss of privacy under the Fourteenth Amendment outweigh the potential for injury and death to an innocent child. We expressly do not reach that issue.