567 A.2d 458

Robert B. CHAMBERS

v.

STATE of Maryland.

No. 630, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Dec. 27, 1989.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before BLOOM, WENNER and FISCHER, JJ.

WENNER, Judge.

Appellant, Robert Bernard Chambers, was convicted by a jury in the Circuit Court for Baltimore County (Joseph F. Murphy, Jr., J., presiding) [1] of robbery. He was also convicted of robbery with a deadly weapon. The conviction for robbery was merged with the conviction for robbery with a deadly weapon. The court sentenced appellant to five years imprisonment. Upon this appeal, appellant presents us with four questions: [2]

---

**1.** Judge James T. Smith, Jr., presided at the suppression hearing.

**2.** We have restated and rearranged the questions presented by appellant. As presented by him, the questions are:

 1. Should the trial judge have granted Appellant's motion for a mistrial once it had been established that documents that had not been admitted as evidence were submitted to the jury during deliberations?

I. Did the circuit court err when it denied his motion to suppress an out-of-court identification?

II. Did the circuit court err when it refused to grant him a requested jury instruction?

III. Did the circuit court err when it denied his motions for mistrial?

IV. Was the evidence insufficient to sustain his convictions?

We shall answer each question in the negative, and affirm the judgments of the circuit court.

Only such facts as are necessary for our resolution of the questions presented by appellant will be recounted. Suffice it to say at the outset that appellant and two black males entered a retail store in Baltimore County and robbed Dorothy Sergeant, an employee of the store, at gunpoint. Approximately $60 in cash, several items from the store, and a ring and watch belonging to Ms. Sergeant were taken by the robbers.

## I.

Appellant contends that his identification by Ms. Sergeant at a pre-trial lineup as one of the men who had robbed her was impermissibly suggestive. Specifically, appellant contends that the lineup identification should have been suppressed because he was older and taller than the other persons in the lineup, and because he was the only person in the lineup that had a bald spot at the back of his head. We see it somewhat differently.

---

2. Did the trial judge err in refusing to give a requested missing witness instruction on the absence of an unavailable defense witness?
3. Did the trial judge's questioning of a prosecution witness deny Appellant a fair trial?
4. Was the evidence sufficient to sustain Appellant's convictions?
5. Did the court err in denying Appellant's motion to suppress an extrajudicial identification?

█ In determining the admissibility of an out-of-court identification, we are accustomed to applying what is essentially a two part analysis. First, there must be a showing by appellant that the procedure employed by the police was unnecessarily suggestive. *Loud v. State*, 63 Md.App. 702, 706, 493 A.2d 1092, *cert. denied*, 304 Md. 299, 498 A.2d 1185 (1985). Second, if appellant has cleared that first hurdle, it is incumbent upon the State to show that the reliability of the out-of-court identification outweighs its suggestiveness.[3] *Id.* With these precepts firmly in mind, we turn now to a review of the evidence adduced at the suppression hearing.

█ Donna Shearer, an attorney representing appellant, was present at the lineup. Her principal objection to the lineup was that appellant was the only person in the lineup who had a bald spot at the back of his head. Ms. Shearer made this objection at the lineup, and she reiterated it at the suppression hearing. It is apparent from the record, however, that the effect of the presence or absence of bald spots in those persons participating in the lineup was, at most, negligible. Although each participant was required individually to step forward from the lineup and be viewed face forward as well as in profile, it was not until the lineup had been concluded and the participants were leaving the room that Ms. Shearer first noticed appellant's bald spot. Moreover, there is nothing in the record to suggest that Ms. Sergeant's identification of any of the men who had robbed her turned upon the presence or absence of a bald spot. Finally, when Ms. Shearer testified at the suppression hearing she said nothing whatever about any difference in the

---

3. The factors to be considered in determining reliability are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Loud, supra,* 63 Md.App. at 707, 493 A.2d 1092 (*quoting Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

ages of the persons who were included in the lineup, nor did she say that appellant was taller than the other persons who were included in the lineup.[4]

■ We do not believe that a lineup must be composed of clones in order to comport with fairness. *Webster v. State,* 299 Md. 581, 620, 474 A.2d 1305 (1984). Slight variations in ages and heights among the persons included in a lineup do not make the procedure per se unfair. *Pope v. State,* 7 Md.App. 533, 535, 256 A.2d 529 (1969). In the case *sub judice* the circuit court adopted, for the sake of argument, appellant's testimony that he differed slightly in age from the other persons in the lineup, and that he was "about the tallest" person in the lineup. Nevertheless, the circuit court concluded that the lineup as composed was not impermissibly suggestive. From the evidence we have just recounted, we are not prepared to say that the circuit court was clearly erroneous in reaching that conclusion. Md.Rule 8–131(c).

## II.

■ According to the three alibi witnesses that testified at trial on behalf of appellant, appellant was with them at the home of Denise Allen at the time of the robbery. Appellant did not learn until several days before trial that Ms. Allen had been transferred from the local jail to the Division of Correction, and, according to appellant, he did not have time to secure a writ so that Ms. Allen could be produced at trial. At appellant's request, the State agreed not to argue to the jury that an inference adverse to appellant could be drawn from Ms. Allen's absence. Appellant asked the court to instruct the jury that "the failure to produce Denise Allen as a witness is not attributable to the State or the defense and should not be held for or against either the State or the defense." The trial judge declined to

---

**4.** There is some indication that Ms. Shearer may have noted an objection as to a difference in the ages of the suspects at the time of the pre-trial lineup.

do so, and appellant contends that the trial judge's failure to give the requested instruction constitutes reversible error. We disagree with appellant for several reasons.[5]

In the first place, a trial judge need give only those instructions which are generated by the evidence adduced at trial; and of course, the instructions actually given must correctly state the law. *Johnson v. State,* 303 Md. 487, 517, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). In the case at hand, the trial judge found that the instruction proposed by appellant was "not appropriate." Inasmuch as the State lived up to its agreement not to argue to the jury that no inferences adverse to appellant could be drawn from the absence of Ms. Allen, we hold that the trial judge was correct in concluding that the instruction proposed by appellant was not generated by the evidence adduced at trial.

Furthermore, as we see it, Ms. Allen was not unavailable to be subpoenaed as a witness simply because appellant was unaware that she had been transferred from a local jail to the Division of Correction. Moreover, it appears to us from the record that Ms. Allen's testimony would have been no more than cumulative. And, as the State points out, the court instructed the jury that the number of witnesses produced at trial is not determinative of which side should prevail. There was no error.

### III.

Appellant next contends that he was entitled to a mistrial for two reasons. First, he contends that he was unduly prejudiced because certain documents not in evidence were sent into the jury room with the jury as it began its deliberations. Second, appellant contends that he was de-

---

5. We are not entirely persuaded by the State's argument that this contention has not been preserved for review. Appellant excepted to the trial judge's failure to give the proposed instruction. Nevertheless, after some discussion, appellant seemed to acquiesce in the circuit court's decision not to give the proposed instruction. In any event, we shall exercise our discretion and address appellant's contention.

nied a fair trial because the trial judge questioned Ms. Sergeant about her inability to identify him in court. We reject both contentions.

Whether to declare a mistrial or not is a matter which is committed to the sound discretion of the trial court. Ordinarily, the exercise of that discretion will not be disturbed upon appeal absent a showing of prejudice to the accused. *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707 (1974). In order to warrant a mistrial, the prejudice to the accused must be real and substantial; a mistrial should never be declared for light or transitory reasons. *Id.* at 430–431, 326 A.2d 707. With that standard in mind, we turn now to the case at hand.

### A.

Shortly after the jury had begun its deliberations, the trial judge was informed by the foreman of the jury that a handwritten letter not in evidence had been found in a box of exhibits submitted to the jury for its consideration. The trial judge had the jury brought into the courtroom, at which time the following exchange occurred:

THE COURT: ... [I]t's come to my attention that apparently the box that was sent in to the jury room that contained the exhibits admitted into evidence in this case also contained other items, a piece of paper with writing on it and four photographs. Three are color photographs, one is a black-and-white photograph. Before I can do anything further, though, I want to make sure that you folks have not used these in any way. You're under oath as jurors in the case, and I need at this time to know whether or not anybody has examined the contents of any of those things. Has anybody reviewed the—

THE FOREMAN: Your Honor, I didn't even see the other photographs you were talking about. They must have been in the bottom of the box.

THE COURT: Yes.

THE FOREMAN: As soon as we saw the sheet, we notified the bailiff. So you found some other things that we didn't know were there.

THE COURT: Okay.

THE FOREMAN: As far as the sheet, that touched no one else's hands but my own. I stood in front of the other jury, I read the top part, I realized the lady's name and I said, "This wasn't submitted." No one recognized it. We immediately threw it back in the box, myself, and no one here has seen the contents of that letter.

THE COURT: Okay, So do I have your assurance, Mr. Foreman, and, of course, the assurance of all the ladies and gentlemen of the jury, that the fact that this stuff was inadvertently left in the box won't play any part in your deliberations?

THE FOREMAN: Absolutely. But I'd sure like to look at it afterwards.

THE COURT: Well, it surely shouldn't have been in the bottom of the box, and for your deliberations no role at all should be assigned to it. Do I have your assurance that that will be the case?

THE JURY: Yes.

Very recently, in *Billman v. State Deposit Insurance Fund Corporation*, 80 Md.App. 333, 563 A.2d 1110 (1989), we were faced with a situation in which it was discovered, after 5½ days of deliberation, that the jury had seen and considered 94 documents which had not been admitted into evidence. We concluded, under those circumstances, that it would be nearly impossible for jurors to disregard their consideration of those documents. Consequently, we reversed Billman's convictions and remanded the case for a new trial. Nevertheless, Chief Judge Gilbert, speaking for the court, pointed out in *Billman* that "[e]ach case must be considered on its own peculiar facts." *Id.* at 344, 563 A.2d 1110. Chief Judge Gilbert went on to say that there is no reversible error where items erroneously submitted to the jury "are not prejudicial, or if it appears that they were not read by any of the jury." *Id. (quoting Aiken v. Dunn, 1*

Misc.2d 215, 147 N.Y.S.2d 450, 452 (1955)). The latter situation mentioned by Chief Judge Gilbert in *Billman* is precisely that with which we are faced here.

 In the case before us, the trial judge was repeatedly assured by the foreman, who was the only member of the jury to have even partially viewed the handwritten statement, that the statement would not be considered as evidence by the jury. Moreover, neither the handwritten statement nor the three photographs were seen by any of the other jurors. Under these circumstances, we are convinced that there was no prejudice to appellant, either real or substantial, in the inadvertent submission to the jury of the items of which appellant complains. Consequently, the trial judge did not abuse his discretion by failing to grant appellant's motion for a mistrial.

### B.

As we have already said, the composition of the pre-trial lineup presented no bar to the admission at trial of Ms. Sergeant's out-of-court identification of appellant. Ms. Sergeant, however, was unable at trial to identify appellant as one of the men who had robbed her. At appellant's request, the State had agreed not to question Ms. Sergeant about whether she could make an in-court identification of appellant. According to appellant, the purpose of this strategy was that he "did not want to highlight the lapse of time between the robbery and trial as the reason for Sergeant's inability to make a courtroom identification [of appellant]." Brief of Appellant at p. 20. Nevertheless, during the trial, the trial judge clarified through Ms. Sergeant that, although she had positively identified appellant at a pre-trial lineup as one of the men who had robbed her, she was not able to identify him in court.

Appellant moved for a mistrial. The trial judge denied the motion. He determined that his questioning of Ms. Sergeant had not unduly prejudiced appellant. In ruling on the motion, the trial judge said:

I mean, was it the intent of counsel for the State and the defense for there to be total silence about the fact that the witness could not make a positive identification? To me, that would be prejudicial to Mr. Chambers. Maybe somebody on the jury would have the impression that she could identify him and had simply not been asked to do so. I think it's much more fair to the defendant that the jury understand that the inability of the witness to make a courtroom identification was not because she wasn't asked, but because she could not do so.

■ Of course, the trial judge has a right to question a witness in order to clarify certain matters, or to make sure that all of the facts are brought out. *Smith v. State,* 66 Md.App. 603, 618, 505 A.2d 564, *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986). In the case *sub judice,* we do not feel that appellant was prejudiced by the trial judge's questioning of Ms. Sergeant. In the first place, appellant did not object when the trial judge questioned Ms. Sergeant, and in the second place, upon cross-examination, appellant himself elicited from Ms. Sergeant that the reason she was unable to make an in-court identification of appellant at a prior trial [6] was "because of the lapse of time." Finally, we observe that it was not until the following day that appellant raised the issue of the propriety of the trial judge's actions by moving for a mistrial.[7]

### IV.

■ Finally, appellant contends that the evidence adduced at trial was insufficient to establish his criminal agency. The gravamen of his contention appears to be that

---

6. Appellant was tried earlier for these offenses. The jury in that case, however, was unable to reach a verdict.

7. The State contends that this issue has not been preserved for review. Although the trial judge admonished appellant for not having objected at the time the evidence came in, he nevertheless ruled upon appellant's motion for mistrial. Consequently, the issue having been raised in, and decided by the lower court, it is properly before us. Md.Rule 8–131(a).

his out-of-court identification by Ms. Sergeant was unreliable and was thus insufficient to sustain his convictions. We disagree.

█ To begin with, we have already held, in Part I of this opinion, that Ms. Sergeant's out-of-court identification of appellant was proper. We also remind appellant that identification by a single witness of the accused as the person who committed the offense is, if believed, sufficient to sustain a conviction. *Eades v. State*, 75 Md.App. 411, 427, 541 A.2d 1001, *cert. denied*, 313 Md. 611, 547 A.2d 188 (1988). Further, there was ample circumstantial evidence before the jury in this case to support appellant's convictions. For example, the description and tag number of a vehicle observed leaving the scene of the robbery was given to the police by the owner of the store which was robbed. The description and tag number matched that of the vehicle in which appellant and two other men were found later that same day; and some of the stolen items were recovered from the back seat of that vehicle. Obviously, the jury was persuaded by the foregoing evidence, rather than by that adduced by appellant and his alibi witnesses.

█ It is not necessary that an extra-judicial identification be confirmed by an identification at trial for there to be sufficient evidence to sustain a conviction. *Bedford v. State*, 293 Md. 172, 443 A.2d 78 (1982). A positive out-of-court identification, coupled with other evidence to connect the person identified with the offense, is sufficient to establish the accused's criminal agency. *Offutt v. State*, 44 Md.App. 670, 675, 410 A.2d 611, *cert. denied* 291 Md. 780 (1980).

The ofttimes cited test for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Wildberger v. State*, 74 Md.App. 107, 110, 536 A.2d 718 (1988). It is obvious from the evidence which we have just recounted, that, in

this case, there was sufficient evidence before the jury to satisfy that test.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.